Ember W. GRUMMONS, d/b/a Atlantic Trailer Sales, to his own use and the use of Liberty Mutual Insurance Company, and Liberty Mutual Insurance Company, Plaintiffs,

v.

Adolphus Y. ZOLLINGER and Bernice Zollinger, partners, d/b/a Zollinger Trailer Company, Defendants.

Civ. No. 2512.

United States District Court
N. D. Indiana,
South Bend Division.

Feb. 18, 1964.

See also D.C., 189 F.Supp. 64.

Roland Obenchain Jr., South Bend, Ind., for defendants.

James P. Kilburn, Battle Creek, Mich., T. Murray, So. Bend, Ind. (Chamberlain), Gilmore Haynie, Ft. Wayne, Ind., for plaintiffs.

GRANT, Chief Judge.

### ORDER

There is before this Court a Motion for Summary Judgment. This Motion, made by the defendants, is based on the entire record. Specifically it includes all the depositions on file, the affidavits on behalf of the parties, and the documents produced pursuant to Rule 34, some of which are attached to the briefs and some of which are incorporated in the Motions.

Briefly, the facts in the case are these: the defendants (Zollinger) manufactured and sold a house trailer to the plaintiff, Grummons, who was a retailer of trailers in the State of New York. Grummons drove to the defendants' place of business at Elkhart, Indiana, where the sale was consummated and delivery was made. Upon his return to New York, Grummons conducted an inspection of the gas stove and heater in the trailer, using a lighted candle, to determine the presence of any leaks. Grummons then filled the tank which supplied the fuel for both stove and heater. No leaks having been discovered by the dealer, the trailer was sold to a Mr. and Mrs. Fotch who set out upon a camping trip.

On the morning after the first night of the trip, Mrs. Fotch attempted to light the stove and an explosion resulted due to fumes that had escaped from a leak in the tubing which carried the gas. Both Mr. and Mrs. Fotch were seriously injured and brought suit against Mr. Grummons for negligence and breach of implied warranty of merchantability under the New York version of the Sales Act. An attempt was made to also sue the Zollingers in that action but they were dismissed as parties on the ground that they were not "doing business" in the State of New York. Mr. Grummons thereupon formally notified the defendants of the action, demanding indemnity for any judgment which might be rendered in favor of the Fotches, together with costs, expenses and reasonable counsel fees, and on the same date tendered the defense of the action to the defendants (Zollinger) who refused the same.

The Fotches secured a judgment of $34,360.08 on the theory of breach of the implied warranty of merchantability and that judgment was "satisfied" by the plaintiff herein, Liberty Mutual Insurance Company, the insurance carrier for Mr. Grummons. Grummons and Liberty Mutual then brought this action to re-

cover over against the manufacturer on the same implied warranty of merchantability found in the Indiana version of the Sales Act. Damages in the sum of $40,113.32 are demanded, which sum includes the amount of the Fotch judgment plus the sum of $5,753.24, which amount, plaintiffs herein claim was expended by them in defending the New York action.

The plaintiffs herein moved for summary judgment, citing Jelleff, Inc., v. Pollack Bros., Inc., 177 F.Supp. 467 (N. D.Ind.1957), and the Court granted the Motion, in part, on October 28, 1960, reserving but two issues for trial. On August 1, 1961 the defendants filed a Motion for Production of Documents under Rule 34 (F.R.Civ.P.), seeking to examine the contents of the claims file of Liberty Mutual Insurance Company made by or on behalf of Walter G. Fotch and his wife against Ember W. Grummons, d/b/a Atlantic Trailer Sales. That Motion was granted by this Court on February 27, 1962, limited, however, to that portion of the file which the Court believed not to be the work product of attorneys. Following the examination of that claim file, the defendants, on June 26, 1962, filed a Motion for Review and to Reconsider the Summary Judgment Order of this Court entered on October 28, 1960. Defendants alleged in that Motion to Review and Reconsider that there had been certain collusive action between the parties in the New York State proceeding; that it was not, in fact, a good faith adversary proceeding and that Grummons' insurance carrier, (Liberty Mutual) had, in fact, effected a settlement with the New York plaintiffs (Fotch) before that action went to trial.

Upon reconsideration this Court did enter an Order on October 4, 1962, setting aside the Order of October 28, 1960, and at the same time overruling plaintiff's Motion for Summary Judgment. Plaintiffs thereupon amended their Complaint to include a third paragraph in which, as an alternative theory, they sought to recover over against the Indiana manufacturer, Zollinger. That amendment is based on the agreement that Liberty Mutual would pay the Fotches $18,500 in full and complete settlement of their claims against Grummons regardless of any judgment that might be had; that, nevertheless, the case would be tried without a jury, and that Liberty Mutual would, thereafter, initiate an action against the Zollingers in Indiana and would pay over to the Fotches any amount recovered therein in excess of the $18,500 settlement, plus any expenses incurred by Liberty Mutual in defending against the claims of the Fotches. The amendment continues to allege that a trial was had on the Fotches' claims and that judgments against Grummons were entered in the total amount of $34,000.00. The plaintiff also alleges the reasonableness of this settlement arrangement, and the expenses incurred by it, as well as the primary liability of the defendants, and the position of the plaintiff as subrogated to the rights of Grummons. The plaintiff seeks recovery in the amount of $40,113.32 on this theory in the event that this Court should find that such a settlement between the Fotches and Liberty Mutual had, in fact, been made.

A counterclaim by the defendants, and a further counterclaim by the additional counterclaimant, Wolverine Insurance Company (Zollingers' carrier), were filed, but are not considered in this Order. Defendants then filed their Motion for Summary Judgment, which Motion is now before us for consideration.

This action was tailored to come within Jelleff, Inc. v. Pollack Bros., Inc., supra. However, for the reasons set forth in the accompanying memorandum we now hold that the New York State Court judgment, upon which this action is based, does not fall within the full faith and credit doctrine, nor the doctrine of res judicata upon which Jelleff is based. We hold that the New York judgment in Fotch v. Grummons was obtained by collusion between the parties thereto, (but without any knowledge thereof on the part of the Court in which the action was tried), and, therefore, the Motion of defendants herein for sum-

mary judgment should be, and the same hereby is granted.

It is so ordered.

### MEMORANDUM

In the consideration of defendants' Motion for Summary Judgment, plaintiffs have filed objections to the consideration by the Court of certain documents, all of which were included in defendants' Motion. In the main, these represent correspondence (gleaned from Liberty Mutual's New York claims file) between the parties to the New York action, including, of course, Grummons' insurance carrier, Liberty Mutual Insurance Company.

It is asserted, as to a number of these documents, that they are within the purview of the attorney's work product doctrine as enunciated by Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L. Ed. 451, (1947). The rule of that case regulates discovery procedures and not the admission of evidence. At this juncture, the Court, having already determined that the documents are discoverable, is confronted with another question —that of the admissibility of those documents.

Additionally, plaintiffs contend that certain documents in question, letters from employees of Liberty Mutual Insurance Company to the attorneys handling the original action on behalf of Grummons, and also from those attorneys to employees of Liberty, are barred from consideration by the Court because of the attorney-client privilege.

█ The attorney-client privilege has a lengthy history in the annals of the law. Its purpose is to insure full and complete disclosure by a person to an attorney in order that the client may be properly advised, represented, and, in appropriate cases, defended by that attorney. To subject such revelations by a client to an attorney to indiscriminate exposure by the testimonial process would interfere with proper representation. It would lead to concealments by clients and thus interfere with the proper administration of justice.

█ It is clear that while this privilege contemplates the rights of an individual client, it is also a portion of those rights essential to the public interest. "This privilege has, however, never been intended to be, and should not be, a cloak or shield for the perpetration of a crime or fraudulent wrong doing." Securities & Exchange Commission v. Harrison, 80 F.Supp. 226, 230 (D.D.C.1948). See also, A. B. Dick Co. v. Marr, 95 F.Supp. 83, 102, (S.D.N.Y.1950). Professor Wigmore points out that the policy reasons on which the privilege is based, do not apply so as to require maintaining the sanctity of the communication in a situation where it is made in furtherance of a crime or fraudulent scheme or activity. VIII Wigmore on Evidence § 2293 (McNaughton Rev.1961). This exception to the attorney-client privilege was recognized in In re Sawyer's Petition, 229 F.2d 805, 809, (7th Cir. 1956). Therein the Court stated: " * * * we think that the rule accepted by all courts today is that a client's communication to his attorney in pursuit of a criminal or fraudulent act yet to be performed is not privileged in any judicial proceeding."

The Complaint in the original action was filed on March 1, 1955, in the Supreme Court of the State of New York and for the County of Monroe. On December 17, 1957, a "Notice of Vouching In" was sent to the defendant Zollinger by certified mail and a return receipt obtained by the plaintiff herein. The cases were consolidated for trial and the trial began on February 3, 1958, before the Court. On March 5, 1958, the New York Court entered its findings of fact and conclusions of law in the consolidated actions.

One of the documents attached to the Motion to Vacate our earlier Order on the Summary Judgment entered October, 28, 1960, is a photo-copy of a telegram dated December 10, 1957, to a Leo McCready of the Liberty Mutual Home Office Claims Department from a W. P. Staplin of the Company's Rochester claims office, requesting a quick response

to his inquiry as to how to handle the Fotch v. Grummons litigation. On December 13, 1957, Mr. McCready wrote Mr. Staplin. There it was stated, inter alia:

"Since trial was pending on Friday, December 13th it appeared that we would have to make a deal with the claimant-attorney, and settle this file in the proper manner so that we could proceed against the third party after we had obtained a judgment against us. The proper legal procedure for such a move has been explained by Mr. Bachman. *This maneuver was brought about because we neglected to seasonably request the third party to come in and take over the defense of this claim.*" (Emphasis added.)

Again, in another letter on the same day, Mr. McCready wrote Mr. Staplin, saying:

" * * * It is our thought that we will find ourselves in a much stronger position if we arrange through the claimant attorney to have his expert testify regarding the defect, rather than rely upon our expert, who indicates that there was a leak but that there also must have been some contributory negligence on behalf of the claimant in order to cause this explosion. We want to be sure that we have a strong case when we go against Zollinger Trailer Company."

On December 16, 1957, Mr. K. W. Crissman of Liberty Mutual's Central Division Claims Office wrote Mr. Staplin of the Rochester office, asking to be brought up to date on the Fotch v. Grummons case. He stated: "I presume that you have settled the case by this date." On December 20, 1957, Mr. Staplin replied that the case had been settled for $18,-500.00. (The trial was to begin several weeks later.)

On February 7, 1958, Mr. Stephen Lines, another of Grummons' counsel, wrote Mr. Staplin informing him of the progress of the trial. Therein he informed him of the various witnesses who had testified in the action. Among them was a Mr. Fred Neussle, who had testified as an expert that the leakage condition, which he found to exist, was a competent and producing cause of the explosion which occurred on the 13th day of June, 1955.

Mr. Lines indicated that a severe snowstorm had occurred in Rochester on February 4, 1958, and this, he said, presented quite a problem as Mr. Thomas, of New Jersey, another expert, had been promised that his testimony would be over the afternoon of the 4th so that he could take a late plane out to New York. Mr. Lines continued (in his aforesaid letter) as follows:

"After much telephoning, we finally arranged to take the deposition of Mr. Thomas in Mr. Chamberlain's home, on Wednesday, the 5th, and this was done. Mr. Thomas testified, in substance, to the same defects as were found by Mr. Hicks and Mr. Neussle, and also testified that they were manufacturing in origin and existed at the time of the assembly of the equipment. He also testified that there would be a leak whether the nut was wrench tight or finger tight. This, then, presented a very delicate problem from the standpoint of the examination of Mr. Thomas. You will recall from his report, his position that if the connection was wrench tight, the leak which he found due to the defective flare and connection, would not create a leak sufficient to sustain combustion within the trailer, but, of course, could not answer the question as to whether or not, assuming the connection was finger tight, the leak would be sufficient to create a combustible mixture.

"For this reason, the writer determined that he would not ask that particular question of Mr. Thomas and have the record establish that the leak, when the connection was wrench tight, could not have caused the explosion, inasmuch as upon cross-examination, we knew that it would be developed that a finger

tight connection would cause a leak and that Mr. Thomas would not be able to state whether that would sustain combustion."

Upon completion of the action before the Supreme Court in New York, on March 5, 1958, Mr. Staplin sent the following telegram to Mr. McCready: "Verdict $22,000 for Mrs., $12,000 for Mr., total of $34,000. Guess we did all right."

The remaining letters attached to the Motion to Vacate detail the additional steps which the plaintiff herein, Grummons, took to "preserve" its rights in an action over against the instant defendants.

Plaintiffs herein contend that certain of these pieces of correspondence are inadmissible because they are statements of agents as to whom there is no showing that they were acting in the course of their duties or within the scope of authority contemplated by their agency when the messages were written and sent to the respective recipients. It is clear, however, that the writers of these letters were in the employ of the plaintiff, Liberty Mutual, at the time they were written and that these people were, by the nature of their positions with the company, assigned to and responsible for the handling of the Fotch v. Grummons litigation.

Particularly, in regard to the telegram from Mr. Staplin to Mr. McCready, Mr. Staplin testified in his deposition that he sent the telegram referred to, to Leo McCready, located in the Home Office Claims Department in Boston. Mr. McCready is a Liability Examiner in that office. Further, he stated that in the telegram he asked for instructions from the Home Office about the handling of the case. Deposition of William R. Staplin, pp. 9–10. Previously, beginning on page 66, he testified under oath that he was formerly the Claims Manager in Rochester, New York, and that he had occasion to do work in connection with the claim involving Ember Grummons and that he had records pertaining to the accident which occurred June 13, 1954, and that

this telegram related to it. *Ibid.* p. 66.

There is some question raised about the fact that there was no showing as to the Home Office decision requested by the message, and, accordingly, that the message is irrelevant. On page 10 of the Staplin deposition, however, Mr. Staplin was asked, after considerable questioning about the Fotch v. Grummons lawsuit, "Am I correct that in that telegram you had asked for instructions from the Home Office about handling *this* claim?", and Mr. Staplin responded, "That is correct."

There remains a contention that no proper foundation has been laid for the admission of this message into evidence under the Business Records Act, 28 U.S.C.A. § 1732. Plaintiffs contend that the mere presence of the document in Liberty's file does not render it admissible, and has called to the attention of the Court National Labor Relations Board v. Sharples Chemicals, 209 F.2d 645, 653 (6th Cir. 1954). That case recites the proposition plaintiff relies on. The Court there stated, however, that the basis of the liberalized rule of the statute was the probability of trustworthiness of the records because they were routine reflections of the operations of the business. The Court in *Sharples* pointed out that the character of the records was the earmark of their reliability and cited the leading case of Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

*Palmer* involved the admissibility of statements under section 1732 made by an engineer of a train which had been involved in a collision with an automobile. In a suit against the railroad by the injured party the railroad invoked the statute seeking to introduce the statement of the then deceased engineer. The statement had been made shortly after the accident. The Supreme Court, in reviewing the action taken below, stated that the document was inadmissible primarily because the preparation of the statement was not a part of the "regular course of business" of the railroad within

the meaning of the act, even though railroads are frequently involved in litigation. The Court stated: "In short, it is manifest that in this case those reports are not for the systematic conduct of the enterprise as a railroad business." Id. at 114, 63 S.Ct. at 481.

In the Sharples case the Court pointed out that "[t]o be admissible under the statute certain qualifications must be met, such as being identified as corporate records and the manner in which they were prepared." In an earlier case, United States v. United Shoe Machinery Corporation, 89 F.Supp. 349, 354, (D. Mass.1950), the Court considered the admissibility of intramural reports of agents as evidence going to bind the corporation. That case was a civil antitrust action, and therein it was stated:

"There is no reason to suppose that in ordinary litigation the federal courts should receive against a corporation a statement in the course of duty made by one corporate agent to another unless it was shown by the offeror of the statement that the corporation either (1) authorized the agent not only to make the intramural statement but to commit the corporation by intramural statements or (2) adopted the statement by appropriate votes or by thereafter conducting its business on the basis of that statement."

The Court went on to state the uses which may be made of the statements admitted after compliance with the above mentioned requirements. The following uses were mentioned:

"(a) For the truth of any event of which the communicating employee had personal knowledge and which occurred within a reasonable time before he wrote * * *.

"(b) For the truth of any event of which the communicating employee was informed, mediately or immediately, by another of defendant's employees who had personal knowledge of it and of which the communicating employee had made a record within one year of the event.

"(c) For the fact that third persons outside the defendant's business organization had made the statements attributed to them. They are not admissible for the truth of those statements."

■ Considering the criteria outlined by the above cases, it is appropriate to apply these to the facts of this case. While the defense of litigation may not be essential to the conduct of a railroad business so as to amount to the regular course of business within the meaning of the statute, such is not the case with insurance companies. The business of an insurance company is the protection of the insured against the contingencies named in the contract. This, by the very nature of things, may include the payment of claims as well as defending against them. Thus, action taken relative to these functions is within the "regular course of business" of an insurance company.

■ Additionally, the statements of the respective authors of the letters here involved, are binding on the corporation because the entire factual situation of this case indicates that Liberty Mutual followed the course of action set out in the various communications. The settlement figure was fixed and the parties agreed to the "loan back" arrangement.

Upon the continuance of the trial setting, formal notice was sent to the Zollingers tendering the defense of the action to them. Trial by jury was waived and the action proceeded on the warranty count of the complaint; findings of fact and conclusions of law were rendered by the New York Court and judgment was accordingly entered thereon; the judgment was paid by the checks of the insurance company, and the loan back to the insurance company of the excess of the judgment over the agreed settlement figure was executed. Upon completion of these arrangements the present action was initiated.

■ Plaintiff, Liberty Mutual, has objected to the Court's consideration of an inter-office memo from Mr. Staplin to Mr. Crissman, dated December 20, 1957, wherein Mr. Staplin stated that the case had been settled at $18,500.00. Liberty contends that the memo is hearsay insofar as it recites the settlement and the amount because Mr. Staplin testified in his deposition that he had no negotiations with the Fotches' attorney and was not present at any negotiations between counsel. It is true that Mr. Staplin so testified, Deposition of William R. Staplin, pp. 13–16, but he also testified that the negotiations with the Fotches' counsel were conducted by Liberty's counsel, Id. at 13; that one of the employees under Mr. Staplin, a Mr. Fischer, had been authorized by the Home Office to attempt adjustment of the case at the $18,500.00 figure, Id. at 12; that from December 16, 1957, the date of receipt of Mr. Mc-Cready's December 13, 1957, letter to Mr. Staplin, Mr. Staplin was aware that authority had been extended to his office to settle the case for that amount, Id. at 13. The December 13, 1957, letter from Mr. McCready to Mr. Staplin states, and Mr. Staplin testified, that the negotiations were to be, and were, handled through counsel. *Ibid.* Further, Mr. Staplin stated that he was advised probably by telephone, that the case had been settled and that the agreement was never upset at a later date. Id., at 16. Also, on page 15 of his deposition Mr. Staplin testified that the statement in the inter-office memo of December 20, 1957, to the effect that the case had been settled for $18,500.00 was a correct statement at that time. Id., at 15.

■ The subsequent course of action by the plaintiff, Liberty Mutual, as amounting to an adoption of the statements of its agents, and thus making the statements binding on the corporation, has been discussed earlier and will not now be repeated. Thus, the portion of Mr. Staplin's memo regarding the settlement of the case may be considered by the Court for the truth of the event or situation United States v. United Shoe Machinery Corporation, supra.

■■ Plaintiff objects to the Court's consideration of the letter from Staplin to Buckley, dated March 18, 1958, on the ground that it is hearsay in that it purports to describe an agreement between attorneys, and the writer testified that he had no part in the contact with the Fotchs' attorney and was not present at any negotiations between counsel. As is the case with the letter discussed immediately above, Mr. Staplin did so testify. Deposition of William R. Staplin, pp. 13–16. However, the letter itself states that Mr. Staplin discussed the subject of conversation with Mr. Lines, one of the counsel for Liberty Mutual in this case. As with the letter considered immediately prior to this one, the subsequent course of action by the plaintiff, Liberty Mutual, as amounting to an adoption of the statements of its agents, and thus making the statements binding on the corporation, has been discussed earlier, and will not be mentioned again. Also, the letter may be considered by the Court, including that portion which purports to describe the agreement between attorneys, for the truth of that fact. United States v. United Shoe Machinery Corporation, supra.

The defendant has incorporated various depositions in the Motion for Summary Judgment. One such deposition is that of Charles F. Bachman, Assistant General Attorney for Liberty Mutual Insurance Company. Mr. Bachman provided Liberty Mutual with legal advice relative to the subsequent suit to be brought against the Zollingers. Liberty has objected to certain of the questions asked in this deposition, and it is these which are now considered. Initially, Liberty objects to a question relating to the purpose of a consultation Bachman had with Mr. Leo McCready of the Claims Department. Bachman Deposition p. 15. Liberty contends that this question is objectionable because it seeks the disclosure of legal advice covered by the attorney-client privilege. Earlier in this opinion the Court has indicated why the privilege would not be applied to certain documents in this case. The same disposition

is now given this contention insofar as Mr. Bachman's deposition is concerned.

█ Liberty contends that a particular line of questioning of Mr. Bachman concerning a report of a particular expert retained by the insurer to determine the cause of the accident, represents hearsay and that it is inadmissible for this reason. Additionally, Liberty complains that a particular question contains a statement of the examining attorney's interpretation of a portion of the expert's opinion and should be stricken for that reason and because the report is the best evidence of its contents but has not been admitted into evidence.

█ The use of the report of the expert in the deposition of Mr. Bachman was not for the purpose of introducing the report itself in a devious fashion; rather, as is pointed out on page 18 of the Bachman deposition, the questioner was merely seeking to refresh Mr. Bachman's recollection as to its contents. It was relevant to inquire as to the nature of the information available to Mr. Bachman when he rendered his advice in order to determine, in light of the subsequent events of record—the trial and the subsequent action over against the manufacturer of the trailer—whether or not the New York trial was a good faith, arm's length, adversary proceeding. Thus, the questioning was not to establish the truth of the contents of the report, and therefore it is admissible into evidence. Further, as to the alleged interpretation by counsel of what the report contained, the witness did not agree with the statement of counsel, and there is no reason to exclude the question. Finally, the contention involving the best evidence rule is not appropriate because the questions asked of Mr. Bachman were not for the purpose of establishing the truth of the facts that may have been contained therein.

Liberty next asserts that additional parts of the deposition, questions beginning on page 19 and extending through to page 38, are improper because they seek the disclosure of the legal advice given by a Home Office attorney to trial counsel and are thus within the attorney-client privilege. The Court has already held to the contrary as to earlier contentions and now so holds as to this one.

With respect to the objection that the questions recite portions of a letter which are not a part of the record, the objection is not well taken for the letter described is attached to the defendant's Motion for Rehearing, and already considered by the Court as being in evidence.

█ Objection is raised to the consideration by the Court of the line of questioning beginning with the last question on page 38 of the Bachman Deposition through the last question on page 50, both inclusive. This line of questions to Mr. Bachman deals with the arrangement between attorney Lines and attorney Chamberlain and the loan receipt agreement which was used for the consummation of the arrangement. The plaintiff points out that Mr. Bachman was not present at any negotiations between these gentlemen and, therefore, the questions and answers relating to the arrangement should be stricken. The Court is in agreement with the plaintiff as to these questions and answers which amount to hearsay testimony. They are excluded from the Court's consideration on that basis. Insofar as the plaintiff has raised other objections to the consideration of this line of interrogation, the same now become moot.

█ Similarly, the questions asked and the answers given by Mr. Bachman in regard to a letter written by Mr. Stephen Lines to Mr. William Staplin concerning the expert opinion of Mr. Thomas about the effect of the gas leakage and its causal connection to the subsequent injuries to the Fotches are hearsay and are excluded from consideration by the Court.

Plaintiff has objected to two questions and answers on page 54 of the Bachman deposition. These questions and answers relate to a letter of December 13, 1957, from Leo McCready to Mr. Staplin. The plaintiff objects that the letter is hearsay as to Mr. Bachman and with this the

Court agrees; however, contrary to what is stated in the objection, the letter has been admitted into evidence and thus the objection loses some of its force. However, out of an abundance of caution, this objection is sustained and these questions and answers are not considered.

The final objection of the plaintiff in regard to the Bachman deposition concerns a letter written by him to Mr. Staplin on January 28, 1959. As to this letter, Mr. Bachman was asked what he had in mind when he raised the question as to whether or not Mr. Grummons might cooperate with reference to signing the affidavit to accompany the Motion for Summary Judgment in the Indiana proceeding. To this he replied that he meant whether or not Mr. Grummons would voluntarily execute the affidavit or whether it would be necessary to take his deposition. (Grummons voluntarily executed the document.) Liberty contends that the question and answer are an invasion of the attorney-client privilege and the work product privilege and thus should be stricken. However, what the Court has previously stated about similar objections applies with equal weight here. The objections are overruled.

The final group of objections raised to the consideration by the Court of the documents and depositions in the record are directed to the deposition of William Staplin, Claims Manager of the Rochester, New York office. The first of these objections refers to a question asked Mr. Staplin on page 4 of the deposition. It was there asked him if he were aware of Mr. Bachman's plan for handling the claim, and he replied that it was about that time, previously stated as December 15, 1957, that Mr. Bachman's plan developed. Liberty contends that there was no showing as to the nature of any such plan. Admitted into evidence and considered by the Court with the defendants' Motion for Summary Judgment is a letter to Mr. Staplin from Mr. McCready which refers to the procedure to be used in settlement of the claim. Thus the objection is denied.

Liberty next objects to the last two questions on page 12 and the first question on page 13 of the Staplin deposition. These questions concern a letter from Mr. McCready to Mr. Staplin dated December 13, 1957. Plaintiff contends that the letter is hearsay as to Mr. Staplin; that there has been no showing that the author was within the scope of his authority as an agent at the time the letter was written so as to bind his principal; and that the letter is the best evidence of its contents. Contrary to the plaintiff's objection, the letter has been admitted into evidence, and previously the Court disposed of the agency contention. As to the alleged hearsay, the letter was written to Mr. Staplin, and received by him, and thus it may properly be considered by the Court along with the questions and answers objected to.

Liberty also objects to the third question on page 13, which asks whether Mr. Crissman stated he presumed the witness (Mr. Staplin) had settled the case. The objections raised are the same as those considered in the previous paragraph and it is enough to say that the same disposition is appropriate.

Additionally, plaintiff objects to the first question on page 15 of Mr. Staplin's deposition. That question inquires whether the witness was aware of what Mr. Bachman's plan was concerning settlement. The objection raised is there had been no showing as to the nature of the plan; but, as mentioned previously, the plan for settlement had been referred to as early as December 13, 1957.

Objection is raised to the consideration by the Court of two questions and answers on page 15 of the Staplin deposition. These refer to an inter-office memo of December 20, 1957, and certain statements made therein by Mr. Staplin. Staplin was asked, "In that (memo) you have indicated 'Case has been settled at $18,500.00'?" and "Was that a correct statement at that time?" To both questions Mr. Staplin answered "Yes". The

74

objections raised as to these two questions are the same as were raised in regard to the memo itself, and the disposition of those objections applies here with equal vitality. The objections are overruled.

■ Objection is also raised to the following question and answer to be found on page 17 of the Staplin deposition:

"Was it your understanding at that time that the case was going ahead to trial and that there was already a settlement agreed upon between the parties?

"Yes."

Liberty contends that since Staplin was not present at any negotiations between counsel, the question calls for hearsay and should be stricken along with the answer thereto. Admittedly Staplin was not present at any negotiations between counsel, but the results of such negotiations were reported to him in the "regular course of business" and, as has previously been mentioned, are admissible under the Business Records Act, 28 U.S.C.A. § 1732. Further, the question merely calls for Mr. Staplin's understanding of the situation and not the actual fact. The question and answer are, therefore, admissible.

■ Liberty next objects to the Court's consideration of the first five questions and answers on page 16 of the Staplin deposition. These questions and answers deal with the alleged settlement agreement of the parties and they are objected to on the basis, *inter alia,* that they contain the examining attorney's assumption that the case had been settled. In this regard it is important to note that the witness responded to these querries without the least hesitation, thereby indicating that he considered the case settled or that at least an agreement had been reached for its disposition. Insofar as these questions are said to seek hearsay, the information which the witness had had come to him by way of the "regular course of business" and thus it comes within the provisions of section 1732. As to the agency contention, no more need be said than to refer to earlier discussions in this Order.

The plaintiff objects to the last question on page 18 of the Staplin deposition, which asks: "The trial in New York was not to affect in any way, then, your agreed settlement of the thing as far as the Fotches were concerned?" The basis for the objection is the same as was asserted to the first five questions on page 16, earlier considered. The same treatment is now given those objections here.

■ Liberty objects to the second and third questions on page 20 of the Staplin deposition. These questions inquire about the telegram sent by Mr. Staplin to Mr. McCready on March 5, 1958. This document has now been admitted into evidence and is binding upon the insurance company as the statement of an agent made while acting in the course of his duties and within the scope of the authority contemplated by his agency.

■ Objection is also raised to the fourth and fifth questions on page 25 and all the questions on page 26 for the same reasons as the objections to the first five questions on page 16. The same treatment is hereby given the objections presently considered as was given these on page 16 Further, the document has been admitted into evidence, and the objection that the best evidence rule bars this line of questioning is now moot.

Finally, objection is directed to the first two questions on page 31 of the Staplin deposition. These questions deal with a letter from attorney Stephen Lines to Mr. Staplin and statements made therein by Mr. Lines. Liberty objects to the Court's consideration of these questions which relate to the deposition of Mr. Thomas, an expert witness. (Mr. Lines indicated in his February 7, 1958, letter reporting to Mr. Staplin that certain questions were intentionally avoided in examination of Mr. Thomas and the questions put to Staplin pertained to that fact.) As a basis for the

objection the attorney-client privilege is asserted. This contention has been repeatedly raised throughout this case, and it has been regularly rejected for reasons previously stated. Thus without restating those reasons, this contention is rejected and the objection is overruled.

Throughout this discussion many contentions have been considered by the Court. Any particular objection not specifically mentioned is deemed repetitive or without merit, and it is accordingly overruled.

Moving now to the substantive aspects of the defendant's Motion for Summary Judgment, it is appropriate to point out that Rule 56(c) of the Federal Rules of Civil Procedure, provides this vehicle for disposing of litigation when:

" * * * the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

This Court, after considering the pleadings, depositions, and admissions on file, as well as the affidavits included in this record, hereby determines that no genuine issue as to any material fact exists.

This determined, the Court must now resolve the question of whether the defendant is entitled to judgment as a matter of law. In this regard the Court must resolve whether the judgment obtained in the New York Supreme Court, and on which paragraphs I and II of the Amended Complaint are based, is a valid, unassailable judgment entitled to full faith and credit as a basis for the litigation here involved.

The first two paragraphs of the Amended Complaint are grounded on a breach of an implied warranty of fitness and on negligence. The third paragraph of the Amended Complaint recites the proceedings of the New York action as well as the arrangement between the Fotches, the Grummonses and Grummons' insurance carrier, Liberty Mutual Insurance Company. It is on this recitation that the plaintiff seeks to recover under paragraph III. As may be determined from careful reading of the Amended Complaint, paragraphs I and II are inextricably related to paragraph III. The three paragraphs are so entwined that one cannot be separated from the other two, and thus the three stand or fall together.

The plaintiff is here seeking to have this Court extend full faith and credit to the New York judgment, and then to invoke the doctrine of res judicata as to it, so as to enable the plaintiff herein to recover. This the Court is unable to do.

It is true that:

"When a person is responsible over to another, either by operation of law or by express contract * * * and he is duly notified of the pendency of the suit and requested to take upon him the defence of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim as if he was the real and nominal party upon the record. In every such case, if due notice is given to such person, the judgment, *if obtained without fraud or collusion* * * * will be conclusive against him, whether he has *appeared* or not." Hartford Accident & Indemnity Co. v. First Nat. Bank & Trust Co. of Hudson et al., 281 N.Y. 162, 22 N.E.2d 324, 326, 123 A.L.R. 1149. (Ct.Appeals New York, 1939) (Emphasis added.)

It is equally true that the principle of res judicata may not be invoked to sustain fraud, and that a judgment obtained by fraud or collusion may not be used as a basis for the application of the doctrine of res judicata. Halloran v. Blue and White Cab Co., 253 Minn. 436, 92 N.W.2d 794 (1958); New York Life Ins. Co. v. Nashville Tr. Co., 200 Tenn. 513, 292 S.W.2d 749, 59 A.L.R.2d 1086 (1956); 30A Am.Jur. 399–400, (Judgments, § 358) (1958).

The plaintiff bases its theory for recovery on Jelleff, Inc., to Use of Liberty Mut. Ins. Co. v. Pollak Bros., Inc., 171 F.Supp. 467 (N.D.Ind.1957). See also Grummons v. Zollinger, 189 F.Supp. 64 (N.D.Ind.1960). Implicit in the Jelleff case, which involved an action over by a retailer against a manufacturer to satisfy a judgment obtained against the retailer by a purchaser of the manufacturer's product which ignited and burst into flames, injuring the purchaser, is the requirement that the initial litigation be a full dress, arm's length, good faith, adversary proceeding. The case of Liberty Mutual Insurance Co., v. J. R. Clark Co., 239 Minn. 511, 59 N.W. 2d 899, (1953), on which the Court in the Jelleff case heavily relies, implies that the same element is an indispensable part of any subsequent action over.

In Hessler v. Hillwood Manufacturing Company, 302 F.2d 61 (6th Cir. 1962) the Court cited the Jelleff decision. Hessler involved an action by a hardware retailer against a nail manufacturer to recover the amount of a judgment paid to a buyer who was injured by a defective nail. On appeal the contention was raised that the defense of the New York case had not been handled skillfully by the Hessler attorneys. In rejecting this contention the Court noted that "[t]here was no claim of *fraud, collusion* or *bad faith* on the part of the attorneys", and further that since the manufacturer had been properly "vouched in" and thus had had an opportunity to defend but did not do so, it could not complain about the manner of representation in the prior suit. The Court thus recognized the necessity that the original law suit be conducted in a full scale adversary manner.

 The record of the instant case indicates that the trial which took place in the New York Supreme Court was for the purpose of arranging the record so as to enable the plaintiff to bring this suit under the theory of the Jelleff case. Staplin Deposition, p. 18. Such is not the type of proceeding contemplated by the adversary requirement.

Further, the record now before this Court indicates the New York controversy had been settled prior to the actual trial. Staplin letter to Crissman on December 20, 1957; see also Staplin deposition, p. 16. In fact, it had been settled prior to December 23, 1957, the date on which the defendants, Zollingers, received the Notice of Vouching-in from Grummons. See Return Receipt attached as Exhibit "J" to the plaintiff's Motion for Summary Judgment.

Without detailing in any greater degree the particulars, suffice it to say that the character of the entire record is such that the New York action was something less than an arm's length, good faith adversary proceeding. Thus the judgment from that action is not sufficient on which to base a claim for recovery in an action over. For this reason the defendant's Motion for Summary Judgment is granted. Action on the counterclaims will be held in abeyance pending the outcome of any appeal that may be taken by the parties.