**MOLDEX, INC., Plaintiff,**

v.

**OGDEN ENGINEERING CORPORATION, Defendant and Counter-claimant,**

v.

**MOLDEX, INC., Counter-defendant.**

**Civ. No. H–84–309 (PCD).**

United States District Court,
D. Connecticut.

Jan. 30, 1987.

Gilbert Galer, Galer & Sensale, New Haven, Conn., for plaintiff Moldex.

John Scully, Lorinda S. Coon, Hartford, Conn., for Moldex on counterclaim.

Thomas Parker, Gross, Hyde & Williams, Kevin McCann, Hartford, Conn., Lester Murphy, East Chicago, Ill., for Ogden.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

### I. *Facts and Procedural History*

On July 7, 1982, plaintiff and defendant entered into a contract whereby plaintiff agreed to sell 5000 lbs. of oriented nylon (31,250 ft.) to defendant at a total price of $50,312.50. Between July 22, 1982, and July 18, 1983, 18,930 ft. ($30,478.30) of the

original order was delivered. In August of 1983, defendant, on behalf of its purchaser, contacted plaintiff to inquire as to whether the nylon could be dyed without changing its properties. It was assured by plaintiff that such could be done. Subsequent to these alleged representations, defendant accepted the remaining balance of its order, 15,219 ft.[1] Defendant claims the goods did not conform to the representations and refused to pay the balance of the contract. It has paid $32,007.20 under the contract; $24,577.25 is claimed to be due and owing.

On November 19, 1984, defendant's purchaser of the nylon, Ogden Health Products ("OHP"), instituted an action in an Indiana state court claiming the goods were defective and seeking to recover damages for the resulting losses. Defendant attempted to "vouch-in" plaintiff, pursuant to the Uniform Commercial Code § 2–607, claiming that plaintiff was answerable over to the extent defendant was found liable for any damages.[2] The Indiana court found the goods defective and held that OHP had suffered $624,628.86 in damages for which defendant was liable and for which, in turn, plaintiff was answerable over. *Ogden Health Prod. v. Ogden Engineering Corp.*, Civil No. C–84–198 (Newton Cir.Ct.Ind. Mar. 18, 1985) (Findings of Fact and Conclusions of Law), *aff'd sub nom. on other grounds Moldex, Inc. v. Ogden Health Prod.*, 489 N.E.2d 130 (Ind.App. 4 Dist.1986).

Plaintiff instituted this action to recover the balance, plus interest, due and owing on the contract.[3] Defendant has counterclaimed asserting that the goods were defective as not conforming to the express warranties (U.C.C. § 2–313), the implied warranty of merchantability (U.C.C. § 2–

314), and the implied warranty of fitness for a particular purpose (U.C.C. § 2–315).[4] Defendant further claims that plaintiff is liable to defendant for $624,628.16, the amount at which damages were assessed in the Indiana court.

The parties have filed cross-motions for summary judgment. Defendant argues that plaintiff is bound—via U.C.C. § 2–607, collateral estoppel, res judicata, and by principles of comity as embodied in the Full Faith and Credit Clause—to the findings and conclusions of the Indiana judgment and thus there remains no question of fact in this suit. Plaintiff argues that it cannot be held to have breached any warranties, since the representations claimed to have constituted the warranties occurred after the contract was created and, therefore, were not part of the bargain. Furthermore, it argues that the goods were not defective and were fit for their ordinary use. Accordingly, it claims there is no question of fact that defendant is in breach and demands the balance due and owing.

## II. *Summary Judgment*

"Rule 56(c) mandates the entry of summary judgment, ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The purpose "is to isolate and dispose of factually unsupported claims or defenses." *Id.* 106 S.Ct. at 2553.

## III. *Vouching-In*

Defendant claims that plaintiff is bound, by virtue of U.C.C. § 2–607(5)(a), to the following facts:

1. Apparently, an extra 3,899 ft. was shipped in excess of the purchase order. It is unclear from the facts as to whether this amount was shipped before or after the August 1983 representation.

2. *See* Conn.Gen.Stat. § 42a–2–607; Ind.Stat. § 26–1–2–607. The parties agree that, as to the issues discussed herein, Connecticut and Indiana follow the same rules and that the applicable Uniform Commercial Code provisions are identical to each other and the general code. Accordingly, the choice of law question need

not be addressed. All textual references will be to the general code.

3. This action originally filed in state court was removed, 28 U.S.C. § 1441(a), on the basis of diversity jurisdiction, 28 U.S.C. § 1332.

4. *See* Conn.Gen.Stat. §§ 42a–2–313, –314, –315; Ind.Stat. §§ 26–1–2–313, –314, –315, respectively.

(1) The goods were defective as nonconforming and in violation of the warranties given to OHP. *Ogden Health Prod.*, Civil No. C–84–198, Findings of Fact at Facts ¶¶ 7–8, 11–16, 19, 35–38, 42–43, 45–46, and Conclusions of Law at ¶¶ 3–7 (March 18, 1985).[5]

(2) The amount of loss sustained by OHP and the damage in issue here is $624,-628.86, plus interest. *Id.*, Facts at ¶¶ 46–47; Conclusions at ¶ 2.

(3) Plaintiff was properly vouched-in. *Id.*, Facts at ¶¶ 48–50; Conclusions at ¶ 8.

(4) Plaintiff is answerable over for the losses incurred by defendant. *Id.*, Conclusions at ¶ 9.

Section 2–607, U.C.C. provides:
Where the buyer is sued for breach of warranty or other obligation for which his seller is answerable over

(a) he may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after reasonable receipt of the notice does come in and defend he is so bound.

This provision, although now codified,[6] was previously a well established, common law concept. As early as 1931, Connecticut recognized that, "if [a] ... purchaser or any subsequent vendee is sued in an action ... and gives notice to his vendor of the pendency of the action and its nature and requests him to defend, the latter is conclusively bound by the judgment rendered in that action." *Thomas v. Ferriss*, 113 Conn. 539, 542, 155 A. 829, 830 (1931) (citations omitted). *See also*, H. Belkin, *Sales Law—The "Vouching In" Provision of the Uniform Commercial Code*, 36 Conn.Bar J. 288, 289 (1962) (discussing common law vouching system versus UCC system);

*Contractors Lumber & Supply Co. v. Champion Int'l Corp.*, 463 So.2d 1084, 1086 (Miss.1985) (U.C.C. § 2–607(5)(a) codifies common law procedure of vouching-in).

The effect of U.C.C. § 2–607(5)(a) is clear. Vouching-in binds the vouchee to facts determined in the prior proceeding provided they are common issues relevant to both determinations. *Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.*, 177 Ind.App. 508, 380 N.E.2d 571, 580 (2 Dist.1978); *George E. Jensen Contractor, Inc. v. Quality Mill Works, Inc.*, 431 So.2d 1232, 1235 (Ala.1983); R. Anderson, *Uniform Commercial Code*, Vol. 4, §§ 2–607:66 —:75 (1983 & Supp.1986); R. Degnan & A. Barton, "Vouching to Qualified Warranty: Case Law and Commercial Code," 51 Cal.L. Rev. 471, 484 (1963). Compliance with the procedural requirements does not give rise to a right to obtain indemnity, but rather establishes a mechanism by which the findings determined in the first action are made binding in the second action. *Uniroyal*, 177 Ind.App. 508, 380 N.E.2d at 581–82; *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 657 P.2d 517, 529 (1983); *George E. Jensen*, 431 So.2d at 1235; *U.I. Wire & Cable Co. v. Ascher Corp.*, 34 N.J. 121, 126, 167 A.2d 633, 636 (1961).

Nevertheless, a small exception has been carved from the general rule where the first action was not a good faith, adversarial proceeding. "The justification for allowing voucher is that it is senseless to try identical issues between the same parties twice, and therefore, any issues decided in the first trial, as well as findings of fact necessarily made, are binding on the parties in a second suit. *If there is no trial, such findings would tend to be agreed upon without vigorous contest or the best effort of both litigants.*" *CGM Valve Co., Inc. v. Gulfstream Steel Corp.*, 596 S.W.2d 161, 164 (Tex.Civ.App.1980) (emphasis added). A full dress, good faith, adversary

**5.** The copy of the Indiana ruling provided is missing page 4. It is assumed that had this page impacted differently on the arguments presented, it would have been brought to the court's attention.

**6.** *See* Conn.Gen.Stat. § 42a-2-607(5)(a); Ind. Stat. § 26-1-2-607(5)(a).

proceeding has been defined as an "actual trial with a contest of the issues for actual determination of the facts by court or jury and of law by court rather than a resolving of those same issues by agreement of the parties under a prior settlement agreement." *Stewart & Foulke, Inc. v. Robertshaw Controls Co.*, 397 F.2d 971, 973 (5th Cir.1968) (holding settlement agreement reached in previous action could not be relied on as a basis to later support an action for judgment against the vouchee). *Accord Grummons v. Zollinger*, 240 F.Supp. 63, 75–76 (N.D.Ind.1964), *aff'd*, 341 F.2d 464 (7th Cir.1965) (settlement); *Gentry v. Wilmington Trust Co.*, 321 F.Supp. 1379, 1383 (D.Del.1970) (settlement); *CGM Valve Co.*, 596 S.W.2d at 164 (settlement); *Dodge Trucks, Inc. v. Wilson*, 140 Ga.App. 743, 745–46, 231 S.E.2d 818, 820–21 (1976), *aff'd* 238 Ga. 636, 235 S.E.2d 142 (1977) (settlement); *cf. Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F.Supp. 919 (N.D.Ill.1986), citing *St. Joseph Light & Power Co. v. Zurich Ins. Co.*, 698 F.2d 1351, 1360 (8th Cir.1983) (admission); *see generally* R. Anderson, *Uniform Commercial Code*, § 2–607–75 at 165. In *Grummons*, the court held that the first action was little more than an attempt by the parties to arrange the record for judicial recognition so as to use such record as a basis for judgment in the second action. 240 F.Supp. at 76; *see also Gentry*, 321 F.Supp. at 1383. Such conduct "present[s] a serious risk of collusion" and undermines the purpose of § 2–607 to hold a seller liable only after a "conscientiously conducted defense" was performed on his behalf. *Id.*

■ Plaintiff has presented four pieces of evidence in support of its reliance on this exception:

(1) Ralph Ogden is 100% owner and president of Ogden Engineering Corp. and has an 85% ownership in OHP. (He and one other person are general partners owning 85% of the corporation. Ogden controls 70% of the partnership). Deposition of Ralph Ogden at 7 & 60.

(2) Defendant's counsel, Lester Murphy, represents defendant in this suit, despite the fact that he represented OHP in the Indiana proceeding.

(3) Discovery in the Indiana case on behalf of Ogden Engineering by its attorney, Thomas Ryan, was not conscientious. Defendant's Exhibit B.[7]

(4) The Findings of Fact and Conclusions of Law relied on by defendant were prepared entirely by Attorney Murphy, admitted without objection by Attorney Ryan, and adopted without change by the Indiana court.

Taken together, these claims suggest that the Indiana judgment may have been a sham rather than a good faith adversarial proceeding. Summary judgment is denied on this issue. *Celotex*, 106 S.Ct. at 2553–54.

■ Furthermore, even if summary judgment were proper on the issue of the validity of the Indiana judgment, that judgment would not be conclusive on the issue of whether plaintiff is answerable over for the damages assessed against defendant. While the court might be held to the trial court's finding of defendant's proper compliance with the procedural requirements of § 2–607(5)(a), *Ogden Health Prod.*, 489 N.E.2d at 133, and that defects were proven, *Uniroyal*, 177 Ind.App. 508, 380 N.E.2d at 579–80, and perhaps to the quantum of damages assessed by the court, *U.I. Wire*, 37 N.J. at 126, 167 A.2d at 636, plaintiff could not be held liable to the fact that it was answerable over to defendant, since that was not an issue properly before the trial court as plaintiff had not appeared to contest it. *Uniroyal*, 177 Ind.App. 508, 380 N.E.2d at 582; *Blommer Chocolate*, 635 F.Supp. at 924; *Black*, 232 Kan. 458, 657 P.2d at 529.

**7.** The exact page numbers referenced in the deposition in support of this claim are illegible by virtue of the poor photostatic copy provided.

■ Nevertheless, defendant argues that plaintiff should be bound by res judicata and collateral estoppel and the principles of federalism and comity embodied in the Full Faith and Credit Clause. The court is not unmindful of its obligation to respect the judgments of state courts, *Parsons Steel Inc. v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986), but blind adherence to such an obligation if the judgment in question was obtained other than by a bona fide adversarial process serves no useful purpose. *Grummons*, 240 F.Supp. at 75. Res judicata does not apply "where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, as ... where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney ... sells out his client's interest to the other side ... [there is reason] to set aside ... the former judgment or decree and open the case for a new and fair hearing." *United States v. Throckmorton*, 98 U.S. (8 Otto) 61, 65–66, 25 L.Ed. 93 (1878) (citations omitted). To the extent that the claims made by plaintiff support a finding of collusion, they may properly be attacked in this action.

Defendant's motion for summary judgment is, therefore, denied.

## IV. *Warranties*

Plaintiff has moved for summary judgment on the ground that it cannot be held liable on defendant's counterclaim that it is liable for the damages resulting from the breach of the oriented nylon because the representations claimed to have been made as the basis of the warranties asserted herein were made after the contract was formed. It further argues that this fact likewise calls into question the propriety of holding it liable under § 2–607(5)(a) for the Indiana judgment, since, if it is held not to have breached the warranties, it would similarly not be "answerable over" to defendants.

On July 7, 1982, plaintiff and defendant entered into a contract for the purchase by defendant of 5,000 lbs. of oriented nylon at $1.61 per foot or a total cost of $50,312.50; 18,930 ft. ($30,478.30) were shipped between July 22, 1982, and July 18, 1983. Defendant's Exhibit J. According to defendant, on or about August 30, 1983, defendant, via Ellis Paine, "was assured that the oriented nylon could be dyed without changing its properties." The same representation was made on November 10, 1983, and in a number of telephone conversations. Defendant's Discovery Response to Interrogatory # 5. Subsequent to this August 30, 1983, telephone conversation, defendant received 15,219 ft. ($24,496.15) of the nylon. Based on an alleged failure of the goods to conform to the representations thus made, defendant did not pay plaintiff for any goods shipped after August 30, 1983. Plaintiff seeks the remaining balance, plus interest, due and owing for these goods.

### A. *Express Warranty (U.C.C. § 2–313)*

■ UCC § 2–313 provides, in part, "Any affirmation of fact or promise [or description] made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the description." While a statement made after an agreement may not constitute a warranty, it, nevertheless, may be deemed a modification of the sales contract and thus binding on the parties. *Downie v. Abex Corp.*, 741 F.2d 1235, 1240 (10th Cir.1984); *Bigelow v. Agway, Inc.*, 506 F.2d 551, 555 & n. 6 (2d Cir.1974); R. Anderson, Vol. 3, *Uniform Commercial Code*, § 2–313:42 at 35 (1983 & Supp.1986). *Accord Irvin v. Lowe's of Gainesville, Inc.*, 165 Ga.App. 828, 302 S.E.2d 734 (1983); *Jones v. Abriani*, 169 Ind.App. 556, 350 N.E.2d 635 (1976); *but see* J. White & R. Summers, *Uniform Commercial Code*, § 9–4 at 338 (2d ed. 1980) (concluding that post-deal representation satisfies § 2–313 only if they can be proved as modifications under § 2–209). Plaintiff's alleged repre-

**590**

sentations, however, would constitute a binding modification only if U.C.C. § 2–209 is complied with.[8] Section 2–209(2) requires all modifications to be in writing.[9] However, § 2–209(4) states that an ineffective modification may, nevertheless, be operative if it acts as a waiver. "Otherwise stated, UCC § 2–209(4) permits the finding of a 'waiver' of existing contract rights, even though a party to a contract has not effected a modification or a rescission thereof under subsection (2) or (3)." R. Anderson, Vol. 2, *Uniform Commercial Code*, § 2–209:42 at 335–36 (1983 & Supp. 1986); *J.W. Goodliffe & Son v. Odzer*, 283 Pa.Super.Ct. 148, 423 A.2d 1032 (1980); *Morrison v. Devore Trucking, Inc.*, 68 Ohio App.2d 140, 428 N.E.2d 438 (1980); *Elephant Butte Resort Marina, Inc. v. Wooldridge*, 102 N.M. 286, 694 P.2d 1351 (1985). Defendant has produced sufficient facts to suggest that the parties' conduct in August and November of 1983 and during various other telephone conversations constituted a waiver or restatement of the parties' contractual intent and thus such representation may be binding and enforceable under U.C.C. § 2–209(4). R. Anderson, § 2–209:9 at 320. This is properly a matter for jury determination. *Id.* at § 2–209:12 at 321.[10]

**B.** *Implied Warranty of Merchantability*

Plaintiff claims here that it is not liable for breaching the implied warranty of merchantability, U.C.C. § 2–314, because the oriented nylon served the ordinary purpose for which it was intended. Ogden Deposition at 62.

■ The implied warranty of merchantability holds merchants liable to the extent their goods fail to conform to the ordinary purpose for which they are supposed to be used. U.C.C. § 2–314. A breach of this warranty occurs, if at all, at the time of the sale, *Standard Structural Steel Co. v.*

*Bethlehem Steel Corp.*, 597 F.Supp. 164, 187 (D.Conn.1984); *Liberty Mut. Ins. Co. v. Sears, Roebuck & Co.*, 35 Conn.Supp. 687, 690, 406 A.2d 1254, 1257 (1979), or when they leave the manufacturer's control. *Fellows v. USV Pharmaceutical Corp.*, 502 F.Supp. 297, 299 (D.Md.1980). Thus, the critical question with regard to this warranty is what was the ordinary purpose for which the goods were to be used and were the goods suited for that purpose when they left plaintiff's control. This is properly a question for the jury. *See generally Lindy Homes, Inc. v. Evans Supply Co.*, 357 So.2d 996 (Ala.Civ.App. 1978); *Agri-Business Supply Co. v. Hodge*, 447 So.2d 769 (Ala.Civ.App.1984); *Price Bros. v. Philadelphia Gear Corp.*, 649 F.2d 416 (6th Cir.), *cert. denied*, 454 U.S. 1099, 102 S.Ct. 674, 70 L.Ed.2d 641 (1981).

**C.** *Implied Warranty of Fitness for Particular Purpose*

Plaintiff claims here that it is not liable for breaching the implied warranty of fitness for a particular purpose, U.C.C. § 2–315, because, at the time of the 1982 sale, neither plaintiff nor defendant knew of the particular purpose—dyed belts—for which the nylon would be used.

■ The implied warranty of fitness for a particular purpose holds a seller liable where he knows the purpose for which his buyer intends the goods to be used and that the buyer is relying on his skill and judgment in warranting that those goods will so conform. U.C.C. § 2–315; *Schenck v. Pelkey*, 176 Conn. 245, 253, 405 A.2d 665, 671 (1978). As discussed earlier, the facts arguably support the conclusion that the parties modified their original contract so as to incorporate the representations made in August and November of 1983. R. Anderson, § 2–209:9 at 320. If it is found that such a modification was made and further that plaintiff did impliedly warrant

---

**8.** *See* 42a–2–209; Ind.Stat. § 26–1–2–209.

**9.** It is not disputed that the representations in this case were oral.

**10.** In so holding, defendant's argument that plaintiff has waived the statute of fraud defense need not be addressed.

that the goods would fit the particular purpose for which defendant intended them to be used, and, if those goods were also found to be defective, there would be a breach of U.C.C. § 2–315. These questions, however, are properly left to the jury. R. Anderson, § 2–315:69 at 321. *See generally Harris v. International Harvester Co.,* 127 Misc.2d 426, 486 N.Y.S.2d 600 (1984); *Hinchliffe v. American Motors Corp.,* 184 Conn. 607, 440 A.2d 810, *on remand,* 39 Conn.Supp. 107, 471 A.2d 980, *aff'd,* 192 Conn. 252, 470 A.2d 1216 (1984).

*Conclusion*

The parties' cross-motions for summary judgment are denied. Counsel for both parties shall respond on or before February 18, 1987, as to the status of discovery and the efficacy of a settlement conference.

SO ORDERED.