Arthur YANICK, Plaintiff,

v.

PENNSYLVANIA RAILROAD COMPANY and The New York, New Haven & Hartford Railroad Company, Defendants.

PENNSYLVANIA RAILROAD COMPANY, Defendant and Third-Party Plaintiff,

v.

PULLMAN INCORPORATED, Third-Party Defendant.

Civ. 13428.

United States District Court
E. D. New York.

Feb. 28, 1961.

Conboy, Hewitt, O'Brien & Boardman, New York City, for Pennsylvania R. Co.

Edward F. Butler, Herbert J. Kaplow, Reginald L. Duff, of counsel.

Robert Peet, New York City, for N. Y., N. H. & H. R. Co.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Pullman-Standard Inc. J. Roger Carroll, Peter Fleming, Jr., of counsel.

ZAVATT, District Judge.

This diversity action arises out of an accident in Union Station, Washington, D. C., that occurred on January 15, 1953 when a train operated by The Pennsylvania Railroad Company (Penn), unable to slow down as it approached the station, plowed through the bumping block, causing personal injury and property damage to passengers, station and whatever was in its path. Arthur Yanick, a passenger on the ill-fated train, brought suit against Penn, the operator of the train, and The New York, New Haven & Hartford Railroad Company (New Haven), the owner of the car in which he was riding. Penn cross-claimed against New Haven and also impleaded Pullman Incorporated (Pullman), the manufacturer of the New Haven car. Before trial of the Yanick claim, the third-party aspects including this cross-claim were severed. At the Yanick trial the plaintiff discontinued as against New Haven. Penn admitted liability and after some evidence was taken on the quantum of damages the case was settled for $50,000. Judgment was entered for this amount which has been paid by Penn.

There are now before me the third-party aspects that were severed and also mutual cross-claims between New Haven and Pullman. During the course of extensive pre-trial conferences Pullman has moved for summary judgment on Penn's claims against it for both indemnity and contribution. New Haven has joined in these motions. However, since the issues are the same and since Pullman pulled the laboring oar on these motions I will discuss the issues as if raised by Pullman solely.

Pullman makes two arguments on each of Penn's two claims, i. e. for indemnity and contribution. The first indemnity argument is: (1) The right of a defendant to implead a third-party defendant turns on whether the defendant sought to be impleaded is or may be liable to him. Rule 14(a), F.R.Civ.P., 28 U.S.C.A.; Cf. N.Y. Civil Practice Act, § 193–a.

(2) To determine whether there may be such liability we look to the controlling substantive law.

(3) Under that law an active tort-feasor has no right of common-law indemnity.

(4) On a pre-trial motion the characterization of the nature of a defendant's tort feasance as found in the original plaintiff's complaint is controlling.

(5) The complaint of Yanick characterizes Penn as an active tort-feasor.

(6) Therefore, Penn. has no right of indemnity from Pullman and Pullman should be awarded summary judgment on that claim.

Pullman's basic proposition is number (4). It is an accurate reflection of the recent New York case of Putvin v. Buffalo Electric Co., 1959, 5 N.Y.2d 447, 186 N.Y.S.2d 15, 158 N.E.2d 691, and it follows that, other distinguishing factors aside, if this case were tried in the New York courts, Pullman's motion would be granted. But, of course, the case is not being so tried and the issue is whether a federal court sitting in New York must apply the rule just referred to. The ground rules are simple enough. This court will apply its own rules as to procedure and New York's rules as to substance, and a rule is substantive if it has an outcome determining effect. See Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. We must, therefore, look to see what effect New York attaches to a refusal to entertain third-party suits when active negligence is alleged in the original complaint. Pullman does not argue that a New York court's refusal forever bars the claim of the third-party

plaintiff. That this is not the effect of the New York rule is made clear from the Putvin case itself. See 5 N.Y.2d at pages 459–460, 186 N.Y.S.2d at pages 24–25, 158 N.E.2d at pages 697–698. The logic of the rule seems to be that, if the plaintiff pegs his case to active negligence in his complaint, that is the proof he will offer at the trial. If the plaintiff can sustain his burden, the defendant will have no right to indemnity and a third-party should not be burdened with defending a premature suit. (Alternatively, if the plaintiff should lose there would likewise be no need for a third-party action.)

There is something to be said for this view though it tends to limit the instances in which impleader is permitted. But it is clearly a "procedural" statement as opposed to a substantive one as those terms have already been defined. When a New York court determines the right of a defendant to implead a third-party on the basis of the allegations of the complaint, it does not pass upon the ultimate substantive rights of the defendant against that third party. It merely determines whether any such rights may be asserted in the pending action. It is dealing with a matter of procedure and specifically the timing of the assertion of the defendant's claims against the third party. This is the primary consideration when a defendant in a case pending in a New York State court moves to assert a claim over against a third person who may be liable to him.

Since the question as to when to allow or disallow impleader (so that all possible issues may be determined in one action) is procedural, we are not bound by New York State procedure and may look to federal procedure on this point. The federal view of the function of Rule 14, Rules of Civil Procedure, is "to dispose of the problem in one litigation to save expenses and avoid delay." See Stahlberg v. Hannifin Corp., D.C.N.D.N.Y. 1957, 157 F.Supp. 290, 293; see generally 3 Moore, Federal Practice 412 (2d ed. 1948). In Stahlberg Judge Brennan

sustained a third-party complaint in a case presenting facts similar to ours against an attack similar to the one made by Pullman. He reasoned that under the liberal federal attitude, which does not limit the plaintiff to the precise allegations of the complaint, the plaintiff might introduce upon the trial evidence of passive negligence and, therefore, that the allegations of the complaint should not take precedence over the policy of Rule 14 which is to litigate in one action as many issues as possible.

It remains to be said that in at least two cases federal courts sitting in this state have dismissed complaints in reliance on Putvin. See Suarez v. United States, D.C.S.D.N.Y.1960, 186 F.Supp. 43; Rando v. Luckenbach S. S. Co., D.C. E.D.N.Y.1960, 181 F.Supp. 440. The Suarez case is perhaps distinguishable because there the facts were simple and it was probable that the defendant was either actively negligent or it was not negligent at all and in either case its cross-complaint would serve no purpose. Rando is more like the case at bar in that the facts are complicated and while active negligence was alleged in the complaint it was at least possible that there was a basis in the facts to support a recovery based on passive negligence. Judge Rayfiel relied heavily on Judge Moore's opinion in Guarnieri v. Kewanee-Ross Corp., 2 Cir., 1959, 263 F.2d 413, 421, modified 2 Cir., 270 F.2d 575. There Judge Moore said: "Under New York law * * * [the third-party plaintiff] cannot recover against [the third-party defendant] on the theory of indemnity by operation of law or on any theory of passive-active negligence. In fact, had [the third-party defendant] moved to dismiss on the third-party complaint under the [New York] decisions * * * the motion should have been granted." 263 F.2d at pages 421–422. The Guarnieri case reached the court after trial and it is not clear whether Judge Moore was saying that the dismissal would have been proper on a pre-trial motion or after trial. That the latter is more probable appears from

Judge Moore's dissent in Luckenbach S. S. Co. v. H. Muehlstein & Co., 2 Cir., 1960, 280 F.2d 755, which arose as an appeal from Judge Rayfiel's dismissal of the third-party complaint in Rando. The court dismissed the appeal as presenting a non-final order. (The court had earlier refused to hear the case as an interlocutory appeal on Judge Rayfiel's certification.) Against this background Judge Moore said: "In my opinion the interests of orderly and expeditious trial procedure would best be served by having all issues before the court on the trial so that an appropriate judgment could then be entered upon the facts and verdict resulting therefrom." 280 F.2d at page 759.

Of course, the present motions are made after the disposition of Yanick's claims and so, perhaps, different criteria should be used in assaying Pullman's motions. This brings us to Pullman's second point on its motion to dismiss Penn.'s claim for indemnity. Pullman argues that the judgment for Yanick and against Penn conclusively establishes the allegations in Yanick's complaint that his injuries were caused by the active negligence of Penn. Undoubtedly, the Yanick judgment has some res judicata effect. For example Yanick's "cause of action" is merged in the judgment. But we would not know without reference to the complaint whether the cause of action so merged arose from a train accident occurring in 1953 or from, say, breach of contract of 1948. Thus even a settled case has a res judicata effect for which reference to a complaint may be important. But it is a far different thing to say, as Pullman does, that the specific allegations, the particular facts that constitute the claim, of a settled case have been determined adversely to the defendant. The policy considerations here are too clear to warrant extensive discussion.

Pullman also argues that the case was not settled. True, as a matter of form, the trial judge directed a verdict for the plaintiff but this followed a conference between the parties which resulted in the settlement figure which the judge thereupon directed. Liability had been conceded before the plaintiff opened to the jury. Furthermore, Pullman in one of its affidavits, refers to the settlement of the Yanick case and its continuance against New Haven and Pullman.

The actual reasons for the settlement have some bearing, also. Apparently, Penn was satisfied that the accident occurred because of brake failure. Brake failure on an interstate train is a violation of section 1 of the Federal Safety Appliance Act, 45 U.S. C.A. § 1, by the carrier controlling the train. Passengers who are injured thereby have a remedy based on state law against the carrier in which the violation of the federal act is either conclusive proof of negligence ("negligence per se"), presumptive evidence of negligence, or may be enough to fasten liability on the carrier irrespective of fault under the theory of absolute liability. See Jacobson v. New York, N. H. & H. R. R. Co., 1 Cir., 1953, 206 F.2d 153, affirmed per curiam 1954, 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067, compare Puterman v. Pennsylvania R. R. Co., D.C.E.D.N.Y 1957, 148 F.Supp. 428 (suggesting negligence per se), with Pennsylvania R. R. Co. v. Pomeroy, 1956, 99 U.S.App.D.C. 272, 239 F.2d 435 (suggesting absolute liability). See also O'Donnell v. Elgin, J. & E. Ry. Co., 1950, 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (railroad employee may recover without proof of fault). These decisions illustrate that Penn was judicious in settling Yanick's claim for the figure which all parties agree was reasonable. This fact also shows the advantage of allowing third-party practice in this type of case where liability could result from a far lesser showing of culpability than the allegations of the complaint.

This brings us to Pullman's arguments addressed to Penn's claim for contribution. Again Pullman has two lines of attack. First, it argues that the New York law of contribution controls and that New York allows contribution only between tort-feasors who have been saddled with a common judgment, and then

only after one tort-feasor has paid more than his pro-rata share. See N.Y.Civil Practice Act, § 211–a. Secondly, it argues that even should New York apply the law of the District of Columbia, Penn. still must lose because contribution in the District is limited to acts of "concurrent negligence" as defined by judicial decisions in that jurisdiction, and that this is not a concurrent tort.

 The first argument is easily disposed of. Although, under the usual principles of conflict of laws, the forum (here New York since the federal courts in conflict matters look to the state in which they sit) would apply the contribution rule of the situs (here the District of Columbia), the forum may apply its own rule when to do otherwise would violate the "strong public policy" of the forum. Pullman argues that the restrictive contribution rule embodied in section 211–a is declarative of New York's strong public policy in these matters. However, the Appellate Division of the Second Department has just ruled to the contrary, holding that New York would apply the liberal contribution law of New Jersey. See Tuffarella v. Erie R. R. Co., 1960, 10 A.D.2d 525, 203 N.Y.S.2d 468.

Pullman's argument directed to the state of the law of contribution in the District of Columbia is quite narrow. Pullman recognizes that by judicial decision the District has evolved a law of contribution between tort-feasors and that contribution does not depend upon a joint judgment as it does in New York. Pullman's argument is based entirely upon one footnote in one case and it is well to quote that footnote in its entirety:

> "For so long courts have used the terms 'joint tort-feasors' and 'concurrent tort-feasors' interchangeably that the usage must be accepted. Strictly speaking, however, a jointly committed tort results from the concerted action of two or more persons, while a concurrently committed tort results from the independent action of two or more persons, *done at the same time and place,* but producing a single injury. Either a jointly committed tort or a concurrently committed tort may result in joint liability on the part of the tort-feasors."

Knell v. Feltman, 1949, 85 U.S.App. D.C. 22, 174 F.2d 662, 663 (emphasis added). Assuming, as we can, that the parties (Penn, New Haven and Pullman) have not acted with the concert required for a joint tort as defined, the inquiry which Pullman invites is whether the activities of the various parties were concurrent, i. e. done at the same time and place. Pullman argues that they were not because its acts of negligence occurred, arguendo, in 1949 when it carelessly designed and manufactured a defective coach, while Penn's negligence occurred in the early morning of January 15, 1953 when it ran its train headlong into Union Station. Of course, the footnote is only dictum. Furthermore, since no cases are cited in it, it does not appear to be a synthesis of controlling decisions. If it were such a synthesis it would matter not that other jurisdictions recognizing contribution have a less restrictive definition of concurrent torts. But since the footnote does not synthesize the cases, it is important to note that as a general proposition a concurrent tort does not require simultaneous acts. See 1 Harper & James, Torts 693 & n. 9 (1956).

Putting to one side the logic of the definition, a relevant inquiry is whether the subsequent cases in the District have applied the footnote definition strictly. In D. C. Transit System, Inc. v. Slingland, 1959, 105 U.S.App.D.C. 264, 266 F.2d 465, 72 A.L.R.2d 1290, the court allowed contribution between tort-feasors where one defendant's negligent act had preceded the negligent act of the second defendant by about five minutes. Is this identity of time? A similar case decided in another jurisdiction has been cited for the propsition that a concurrent tort does not require simultaneous acts. See 1 Harper & James, op. cit. supra at p. 693 n. 9. Another case bearing on the

problem is Keleket X-Ray Corp. v. United States, 1960, 107 U.S.App.D.C. 138, 275 F.2d 167, reversing Slater v. Keleket X-Ray Corp., D.C.D.C.1959, 172 F.Supp. 715. The case arose on a motion to dismiss a cross-complaint and the issue was whether the United States might be required to contribute to a defendant tort-feasor when the United States could no longer be liable to the original plaintiff because of the shortened statute of limitations in cases under the Federal Tort Claims Act, 28 U.S.C.A. § 2401(b). It appeared that the manufacturer might be liable to the plaintiff for having made a defective piece of machinery and that the United States might be liable for using the machine in a negligent manner. Clearly the manufacture preceded the use and therefore the decision by the Court of Appeals in allowing the cross-claim against the statute of limitations bears on the problem now before me. However, the case is perhaps weakened as precedent for two reasons. First, the issue of whether contribution requires identity of negligent acts was not raised. Second, the manufacturer not only made the machine but was also under a duty to maintain it. See 172 F.Supp. at page 716. Pullman argues that the duty of the manufacturer in that case to maintain the equipment was a continuous duty which thereby enlarged the temporal aspect of the manufacturer's negligence so as to bring it into identity with the negligence of the government. But it seems to me that the plaintiff was not relying on the manufacturer's contractual duty to maintain the equipment that runs to the government but, rather, on its obligation as a manufacturer sounding in tort, which transcends privity. I do not consider this case as standing for the proposition that, in the District of Columbia, there can be no right to contribution unless the negligent acts of the several defendants are simultaneous.

It thus appears from the subsequent cases that contribution in the District does not depend on simultaneous negligent acts. Rather, the cases indicate that the courts of the District are following another dictum of the Knell case:

"[W]e adopt for the District of Columbia, without exception or reservation, the rule stated by Chief Judge Groner in the George's Radio Case [George's Radio, Inc. v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219] 'that when the parties are not intentional and wilful wrongdoers, but are made so by legal inference or intendment, contribution may be enforced.'" 174 F.2d at page 666.

The motions of Pullman and New Haven for summary judgment on the ground that, as a matter of law, Penn is not entitled to indemnity or contribution are denied.