George AMBROSE, Plaintiff,

v.

STANDARD OIL COMPANY OF CALIFORNIA, Western Operations, Inc., Electrical Products Consolidated, and Electrical Products Corporation, Defendants.

Civ. No. 60-96.

United States District Court
D. Oregon.

Feb. 11, 1963.

Helm & Neely, La Grande, Or., for plaintiff.

R. E. Kriesien, of Mize & Kriesien, Portland, Or., for defendant Standard Oil Co. of Cal., Western Operations, Inc.

George H. Corey, of Corey & Byler, Pendleton, Or., for defendant Electrical Products Consolidated.

James Bruce, of Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant Electrical Products Corporation.

KILKENNY, District Judge.

Plaintiff, on May 17, 1961, obtained Judgment, in this Court, against all defendants for the sum of $27,227.50, together with costs taxed at $314.52. On June 12, 1961, each of the defendants paid one-third of the amount of the Judgment. The payments were made on condition that each of the parties retained the right to maintain such action as might be proper against a co-defendant for indemnity.

This is a supplemental proceeding by Standard to enforce a claimed right of indemnity against the other two defendants. On April 1, 1958, plaintiff (Ambrose) was injured by a sign which fell from a pole which was owned by Standard. Standard employed defendant, Electrical Products Corporation, to design, manufacture, construct and erect the sign in question and Electrical Products Corporation employed defendant, Electrical Products Consolidated (Consolidated), to assemble and erect the sign including the pole couplings and brackets which work was performed by Consolidated on August 12, 1957. The contract between Standard and Electrical Products provided for the indemnification of Standard from all loss [1]. The defendant, Standard, claims indemnity against both Electrical Products and Consolidated on the express terms of said agreement; on a breach of express and implied contractual obligations to erect the sign in a safe and workmanlike manner and a theory that said defendants were primarily responsible for the loss. It is Standard's contention that its negligence, if any, was passive and that the negligence of defendants, Electrical Products and Consolidated, was active.

Both Electrical Products and Consolidated contend that Standard was guilty of active negligence which was a proximate cause of the falling sign. The cause is submitted to the court on the

---

1. Liability 5.1 "General liability: Contractor shall indemnify and save company harmless from and against any and all loss, damage, injury, liability and claims thereof or injuries to or death of persons, and all loss of or damage to property of others, resulting directly or indirectly from the contractor's performance of this contract."

testimony, the exhibits, and the entire record in the main case which resulted in the Judgment in favor of Ambrose against all three defendants.

In the main trial the Court found, among other things, that defendant, Standard, was negligent, in the following particulars:

(1) In accepting and approving the specifications and design for the couplings and brackets for the sign using two inch standard pipe for the top bracket and one and one-half inch standard pipe for the bottom bracket.

(2) In failing to inspect said sign subsequent to its construction and erection and prior to plaintiff's injury on the 1st day of April, 1958.

(3) In failing to reinforce the pipe supports or brackets subsequent to acceptance of the sign and prior to plaintiff's injury on the 1st day of April, 1958.

(4) In failing to properly engage, tighten and secure the brackets and couplings by which said sign was supported subsequent to its acceptance and prior to plaintiff's injury on the 1st day of April, 1958.

(5) In accepting said sign without brackets properly engaged, tightened and secured and of a sufficient size and strength to properly support said sign.

(6) In failing to repair said sign after notification of its apparent defect.

And that each of said acts of negligence was a proximate cause of the fall of the sign and the resulting injuries and damage to the plaintiff.

The Court found Electrical Products negligent in the following particulars:

(1) In specifying two-inch standard pipe in the specifications and design of the top bracket and one and one-half inch standard pipe in the specifications and design of the bottom bracket from which said sign was suspended.

(2) In failing to inspect said sign as or after it was assembled or erected.

(3) In using two-inch standard pipe for the top bracket and one and one-half inch standard pipe for the bottom braket of said sign in its manufacture.

(4) In accepting said sign without brackets properly engaged, tightened and secured and of a sufficient size and strength to properly support said sign.

(5) In failing to perform proper or any tests of couplings and brackets for this or similar signs.

And that each of said acts was a proximate cause of the fall of the sign and resulting injuries to plaintiff.

The Court found Consolidated negligent in the following particulars:

(1) In failing to properly inspect said sign at the time of its assembly and erection.

(2) In failing to properly engage and tighten the top bracket and top pipe coupling in the assembly and erection of said sign.

(3) In using a top pole coupling only partially threaded.

(4) In failing to take any corrective measures after notification by Standard Oil Company of California, Western Operations, Inc., of similar sign failures in the general area and prior to plaintiff's injury.

The Court found that each of said acts was a proximate cause of the fall of the sign and resulting injuries and damage to plaintiff. I have again reviewed the entire record and can see no reason for departure from my findings in the main case and I adopt those findings as supported by the entire record in this supplemental proceeding.

CONTRACTUAL INDEMNITY

Standard's first contention is that Electrical Products is liable on the express provisions of the indemnity provision of their contract. I agree, unless there is something in the record which would

distinguish this case from Southern Pacific Company v. Morrison-Knudsen Co., 216 Or. 398, 338 P.2d 665. That case stands for the legal principle which enforces indemnity on a contractual provision similar to the one before me, even though there was act of negligence on the part of indemnitee, provided that the contract disclosed a clear intention to permit a recovery under those circumstances. Morrison-Knudsen recognizes that an indemnitee should not recover for losses covered by his own negligence unless such an intention is expressed in the contract by clear and unequivocal language. In that case, the Court held, such an intention was so expressed.

■ ■ To ascertain the true intent of the parties, we must look to the entire contract, including the attached specifications. Champion v. Hammer, 178 Or. 595, 169 P.2d 119; United States v. Hathaway, 242 F.2d 897, 900 (9 Cir. 1957). Consequently, the Indemnity Agreement must be read in the light of and construed with the written guarantee which was part of the specifications [2]. It is clear that the first and the second sentences of the guarantee must be read together, and, if so read, the guarantee against defects in materials and workmanship and the agreement to make repairs or replacements must be limited to a period of 90 days. Additional weight is given to this construction by the language which extends, for a period of 10 years after date of completion, the guarantee in connection with the deterioration or failure of the porcelain enamel parts. The Indemnity Agreement and the guarantee when thus read together cast grave doubt on the precise field the parties intended to cover by the Indemnity Agreement. Hence, I cannot say that the parties, by clear and unequivocal language, intended that Standard should be permitted to recover when its own negligence was a proximate cause of the accident. The Morrison-Knudsen contract contained no such language as set forth in the guarantee.

■ .Aside from the effect of the guarantee, the facts in the present case bear little, if any, resemblance to the facts in Morrison-Knudsen. In Morrison-Knudsen the railroad constructed a spur track at the special instance and request of Morrison-Knudsen so that the latter might have service to a cement bunker. The bunker and the spur track were dependent on each other. There was a continuing business relationship between the two parties and the parties intended a continuous movement of products on the railroad spur. In contrast, Electrical Products had no right to go on the premises of Standard at the completion of the job, with the possible exception of the 90 day period mentioned in the guarantee. The court, in Morrison-Knudsen, called attention to the good business judgment of the railroad in requiring protection from its own negligence while serving the bunker because of the additional hazards and dangers inherent in the use of a bunker. The loss in Morrison-Knudsen occurred during the period of such service. The plaintiff in Morrison-Knudsen was injured while on the property of Morrison-Knudsen where an obstruction was negligently erected by Morrison-Knudsen over the railroad tracks. That factual situation is a far cry from the one here presented. Here the sign was under the exclusive control of Standard. A regular repairman for Standard, by letter dated March 25, 1958, gave actual notice to Standard of the defective condition of the sign. Standard received such communication long prior to the date of the accident. The contention that Standard did not open its mail for a period of ten days is quite untenable. Furthermore, Standard knew or

2. "D. *GUARANTEE:*
"Contractor to guarantee fabrication, installation, and operation for 90 days after date installation has been completed. Sign to be guaranteed against all defects of workmanship and material, and contractor is to make all necessary repairs or replacements without delay and at no cost to Company. Porcelain enamel parts to be guaranteed against deterioration, failure, or color change for 10 years after date of completion."

should have known of the defective condition of the sign for over a month prior to the fall and failed to communicate that information to Electrical Products. Morrison-Knudsen does not stand for the proposition that an indemnitee can stand by for over a month, or even days, after it has notice of a dangerous defect, do nothing about repair of the defect and then call on the indemnitor for indemnity. To the contrary, Morrison-Knudsen recognizes that recovery even under this type of indemnity agreement should not be permitted under these circumstances. Morrison-Knudsen takes cognizance of the principles announced in Southern Pacific Company v. Layman, 173 Or. 275, 145 P.2d 295 which supports the principle that a court should avoid "the harsh results which would follow from an interpretation imposing liability on the indemnitor for the negligence of the indemnitee." In construing an indemnity contract, we are directed by Morrison-Knudsen, to look to (1) the relative status of the parties, particularly, in a financial sense; (2) the relative scope of the privilege accorded the indemnitor; and (3) the degree of additional liability assumed by the indemnitee by reason of the privilege conferred on the indemnitor. Of course, the court in Morrison-Knudsen, and, in Layman, was speaking of the special privileges granted to the users of railroad tracks and the degree of additional liability cast on the indemnitee by reason of such use. Here, we have no such additional privileges, nor any use granted, of Standard's property to Electrical Products or Consolidated.

Bear in mind that neither Electrical Products nor Consolidated had anything to do with the sign after its erection on August 12, 1957 to the date of its collapse on April 1, 1958. They were making no use of Standard's property.

Standard, in its sale of other merchandise, retained title and control over the sign in question[3]. The record is clear that Standard actually undertook the repair of all such signs. In my opinion, the notices by Standard to Consolidated of defective signs at places other than La Grande are of no significance. From all of the evidence in the case, I find that the parties never intended that Electrical Products should indemnify Standard against its own negligence, either under all of the terms of the contract or under the specific provisions of the Indemnity Agreement. The negligence of Standard precludes a recovery under such agreement and I am of the opinion that the Oregon Supreme Court if faced with a factual situation identical with the one here presented would arrive at the same conclusion.

## EXPRESS AND IMPLIED WARRANTIES OF FITNESS

█ Apart from its claim under the Indemnity provision, Standard asserts liability for indemnity against both defendants on account of their breach of express and implied warranties of fitness. That such warranties existed there is no doubt. My problem is applying the proper legal principles to a claim for recovery where the indemnitee had notice of the breach of the warranty and of the dangerous condition of the sign months before the occurrence and did nothing to repair the defects or notify the warrantors prior to the occurrence. The owner of property cannot knowingly permit the same to be and become more dangerous, day by day, and then ask for indemnity when that dangerous condition results in injury to others, for which the owner is liable. These actions on the part of Standard were not merely passive. They partook of a course of reckless disregard that amounts to nothing less than

---

3. "All signs advertising Seller's products and all signs in the colors used by Seller to identify its products or the places at which its products are sold and all of Seller's trademark rights therein are, and they shall continue to be, the property of Seller. No use shall be made of any such sign except in connection with products manufactured or handled by Seller, and Seller shall have the right, at all times during the life of this agreement and within a reasonable period thereafter, to remove or obliterate such signs * * *."

active negligence [4]. The law applicable to this factual situation is fully discussed in Siebrand v. Eyerly Aircraft Company, 196 F.Supp. 936. The legal principles applied in that case are here relevant and, in my opinion, the decision in Siebrand is controlling. Standard's negligence precludes a recovery on either express or implied warranties.

Cases such as Kennedy et al. v. Colt, 216 Or. 647, 339 P.2d 450; Union Pacific Railroad Company v. Bridal Veil Lumber Company, 219 F.2d 825 (9 Cir. 1955) and Gray Line Company v. Goodyear Tire & Rubber Company, 280 F.2d 294 (9 Cir. 1960) are not in conflict with this result.

Furthermore, Oregon law required Standard to notify Electrical Products and Consolidated of any alleged breach of warranty within a reasonable time after Standard knew, or should have known, of the breach. ORS 75.490. Such a notice is a condition precedent to recovery and the buyer must notify the seller, not only of the breach of warranty, but also that he intends to claim damages for such breach. Western Feed Company v. Heidloff, 1962, 230 Or. 324, 370 P.2d 612; Clarizo v. Spada Distribution Co., 1962, Or., 373 P.2d 689. Obviously, the letter by Standard to Consolidated complaining of sign failures at points other than the one in question, and, suggesting an inspection of all other signs, does not meet the requirements of a notice as outlined in the Oregon decisions. Moreover, any notice given after the accident was not given within a reasonable time.

## ACTIVE V. PASSIVE NEGLIGENCE

My findings that Standard had notice of the dangerous condition existing by reason of the loose connection between the sign and the sign pole and that Standard failed to do anything about repairing this condition, places Standard on the same footing as Electrical Products and Consolidated and therefore be- yond the pale of the theories of liability recognized in Astoria v. Astoria & Columbia River R. Co., 67 Or. 538, 136 P. 645, 49 L.R.A.,N.S., 404; and Kennedy et al. v. Colt, supra. The negligence of Standard was not passive as that word is used in the Astoria case. I find that all three parties were in pari delicto.

I find against the contentions of Standard and in favor of those of Electrical Products and Consolidated.

My findings in the original cause and the additional findings in this Opinion shall stand as my Findings of Fact in this proceeding and the applicable law as herein stated shall stand as my Conclusions of Law.

---

4. Restatement of Law, Restitution, Section 93.
   "(d) Recklessness. The rule stated in this Section does not apply if the claim- ant was reckless in the use of the things or if he suspected that the supplier had not properly performed or if he suspected that the chattels were defective."