**Wilmer H. GENTRY and Jean Gentry, Plaintiffs,**

**v.**

**WILMINGTON TRUST COMPANY, a Delaware corporation, Approved Ladder & Equipment Co. of Wilmington, Inc., a Delaware corporation, R. D. Werner Co., a Pennsylvania corporation, Spring Lock Scaffolding Co., a Pennsylvania corporation, and 100 West Tenth Street Corp., a Delaware corporation, Defendants.**

**Civ. A. No. 3605.**

United States District Court,
D. Delaware.

March 31, 1970.

Bruce M. Stargatt and Richard H. May, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs.

B. Wilson Redfearn, of Tybout & Redfearn, Wilmington, Del., for defendants, Wilmington Trust Company and 100 West Tenth Street Corp.

Carl Schnee, Wilmington, Del., for defendant Approved Ladder & Equipment Co. of Wilmington, Inc.

Roger P. Sanders, of Prickett, Ward, Burt & Sanders, Wilmington, Del., for defendant R. D. Werner Co.

Joseph H. Flanzer, of Flanzer & Isaacs, Wilmington, Del., for defendant Spring Lock Scaffolding Co.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Chief Judge.

This is an action brought by Wilmer H. Gentry (Gentry) and his wife, Jean Gentry for personal injuries and loss of services caused by Gentry's fall from a scaffold in the city of Wilmington, Delaware, on March 8, 1968. Gentry was an employee of Frederick G. Krapf & Son, Inc., at the time of the accident, and he was engaged in making repairs on a building owned by defendant Wilmington Truck Company (Wilmington Trust). The scaffold in use was furnished by defendant 100 West Tenth Street Corp. (100 West Tenth). Wilmington Trust is the parent corporation of defendant 100 West Tenth and the two are treated together as "Wilmington Trust" for purposes of this opinion. Defendant Spring Lock Scaffolding Co. (Spring Lock) manufactured the end frame portion of the scaffold. Defendant Approved Ladder & Equipment Co. of Wilmington, Inc., (Approved Ladder) owned the scaffold and leased it to Wilmington Trust. Defendant R. D. Werner Co. (Werner) manufactured the platform portions of the scaffold, known as "Alum-A-Planks".

Plaintiffs allege that the accident and injuries occurred as a result of the negligence of all defendants and alternatively that defendants are strictly liable in tort for damages. Plaintiffs also allege that defendants breached implied warranties of fitness in furnishing to Gentry a scaffold unsuitable and unsafe for him to use. They seek a judgment against all defendants jointly and severally.

Jurisdiction is based on diversity of citizenship. Plaintiffs are citizens of Maryland; Wilmington Trust and Approved Ladder are Delaware corporations, and Spring Lock and Werner are Pennsylvania corporations. The requisite jurisdictional amount is present.

Wilmington Trust and Approved Ladder have crossclaimed against all other defendants for contribution and indemnity. Werner and Spring Lock have crossclaimed for contribution against all other defendants. Werner asserts as an affirmative defense that service of process on it was not proper under the Delaware long arm statute, 8 Del.C. § 382.

On the day set for trial plaintiffs settled their claims against Spring Lock, Approved Ladder, and Wilmington Trust and executed a joint tortfeasors release, pursuant to 10 Del.C. § 6304. The Court must now determine (1) whether personal jurisdiction exists over Werner and (2) whether Approved Ladder and Wilmington Trust may continue to pursue their claims for indemnity against Werner.[1]

8 Del.C. § 382 provides, in relevant part, "any foreign corporation which shall transact business in this State without having qualified to do business under section 371 of this title shall be deemed to have thereby appointed and constituted the Secretary of State its agent for the acceptance of legal process * * *." "Transaction of business" is defined in § 382(b) as " * * * the course or practice of carrying on any business activities in this State, including, without limiting the generality of the foregoing, the solicitation of business or orders in this State."

Other than the occasional dispatch of brochures into Delaware upon request, Werner's only contact with the state is through its manufacturer's representative, DeJure-Windstein, Inc. (DeJure-Windstein), a Pennsylvania corporation. There is no dispute that Dejure-Windstein is an independent contractor. It serves Werner and other companies in soliciting orders for their products, forwarding orders to the plants, and conducting occasional shows for the products in locations convenient to the customers. Werner reserves the right to accept or reject all orders forwarded by DeJure-Windstein. Customers remit directly to Werner and products are shipped from the Werner plant in Greenville, Pennsylvania, directly to Delaware customers.

Since this is a diversity action, Werner's amenability to suit here is determined by the law of Delaware in accordance with requirements of the Constitution of the United States. International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957), Florio v. Powder Power Tool Corp., 248 F.2d 367 (3d Cir. 1957), Meench v. Raymond Corp., D. C., 283 F. Supp. 68 (1968). Fed.R.Civ.P. 4(d)(3) and (7).

None of the parties provide Delaware authority on the interpretation of the relevant statute, and the Court has found none by its own efforts. It is clear from the authorities presented,

1. The Court has ruled that defendants who took a joint tortfeasors release forfeited their claims for contribution. 10 Del.C. § 6302(c). If the settling defendants have a right to claim over against Werner, it must be on a theory other than contribution. Since Spring Lock asserted only a cross claim for contribution, it remains a party to the suit only in response to Werner's claim for contribution against it.

however, that whether the activities of a manufacturer's representative subject the manufacturer to suit in the states where his representative solicits depends on the liberality with which the statutory language "doing business" is interpreted. Quite independently of restrictions imposed by the Constitution, courts disagree on the effect of systematic solicitations by an independent contractor. Compare Nugey v. Paul-Lewis Laboratories, 132 F.Supp. 448 (S.D.N.Y.1955), Gelfand v. Tanner Motor Tours Ltd., 385 F.2d 116 (2d Cir. 1967) with Schmikler v. Petersime Incubator Co., 83 F.Supp. 869 (D.Mass.1949), Ideal Toy Corporation v. Kaysam Corp. of America, 27 F.R.D. 10 (S.D.N.Y.1961). The more liberal standard, as illustrated by the *Nugey* and *Gelfand* cases, is satisfied if the representative is performing services beyond "mere solicitation", and if the services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, its own officials would perform substantially similar ones. *Gelfand,* supra, 385 F.2d at 121. Those cases recognize that two determinations are implicit in the decision to subject a foreign corporation to process. The first is the substantiality of activities and the second is the effect of the legal relationship between the corporation and the representative. If sufficient services are performed for the foreign corporation to satisfy the definition of "doing business", should the corporation be immune from suit because its representative is called an independent contractor?

The more restrictive standard looks only to the presence or absence of the foreign corporation in the state and at the possibility of finding an agency relationship with the representative. Finding the corporation absent in all physical aspects and the representative an independent contractor, it leaves the corporation immune.

This Court is reluctant to make the first tracks in an area so essentially related to state judicial policy. The statute itself, however, indicates an intent to adopt a liberal definition of "doing business", 8 Del.C. § 382(b), and in the absence of evidence to the contrary, the Court will not assume that the state did not intend to take advantage of all extraterritorial jurisdiction permitted by the Constitution. The cases cited by defendant are not persuasive of the wisdom of a narrow definition, and it is significant that Simpkins v. Council Manufacturing Corp., 332 F.2d 733 (8th Cir. 1964) and Meench v. Raymond Corp., supra, involve distributers rather than representatives. The Court holds that the activities of DeJure-Windstein in systematically soliciting orders from Delaware customers, forwarding the orders to Werner, and occasionally conducting displays of Werner products in Delaware are sufficient to subject Werner to the jurisdiction of Delaware courts. It is persuasive that, inasmuch as Werner retains the right to accept or reject all orders, ships directly from the factory to the customer, and is compensated directly by the customer, Werner products could not find their way to Delaware customers without DeJure-Windstein. It cannot be controlling that DeJure-Windstein is compensated by commission rather than by salary.

The indemnity claims of Wilmington Trust and Approved Ladder are based on asserted rights to shift the burden imposed by law on them to Werner, the party allegedly primarily responsible. They say that Werner is liable to them for all their costs in settling with plaintiffs, in that Werner's negligence was "active", or primary, and theirs was "passive", or secondary, Ianire v. University of Delaware, 255 A.2d 687 (Del.Super.1969), for the reason that Werner is responsible for the damages caused by its breach of warranty, 5A Del.C. §§ 2–315, 2–318, and because Werner is strictly liable in tort. Restatement (Second) of Torts, § 402A. Unless the cross-claimants are entitled to no relief under any state of facts which can be proved, their claims may not be dismissed. Rule 12(b) (6), Fed.

R.Civ.P., 2A Moore, Federal Practice ¶ 12.08.

Werner contends that inasmuch as Wilmington Trust and Approved Ladder settled the claims against them without a full-dress, adversary proceeding to determine liability and damages, they forfeited any right to indemnity. Grummons v. Zollinger, 240 F.Supp. 63 (N.D. Ind.1964), aff'd. 341 F.2d 464 (7th Cir. 1965), Stewart and Foulke, Inc. v. Robertshaw Controls Co., 397 F.2d 971 (5th Cir. 1968). The cases relied on, however, arose under the "vouching-in" section of the Uniform Commercial Code, 5A Del.C. § 2–607, which provides that when a buyer is sued for breach of warranty for which his seller may be answerable over, the buyer can tender the defense of the action to the seller. If the seller refuses, he is bound by any determination of fact made in the action against the buyer. To permit the buyer to settle the action and consent to a judgment without a full-scale adversary proceeding would present a serious risk of collusion. If the seller is to be bound by application of § 2–607, determinations of fact sought to be applied against him must be made only after a conscientiously conducted defense.

The cross-claims in the instant case do not invoke the vouching-in provisions of the Code. They are based on the common law right to indemnity pursuant to a showing that the settlement was induced by a real or potential liability, that it was reasonable, and that another is responsible for indemnity. Yanick v. Pennsylvania Railroad Company, 192 F. Supp. 368 (E.D.N.Y.1961), Allied Mutual Casualty Corp. v. General Motors Corp., 279 F.2d 455 (10th Cir. 1960), Pipe Welding Supply Co. v. Gas Atmospheres, Inc., 201 F.Supp. 191, (N.D. Ohio 1961), Early Settlers Ins. Company v. Schweid, 221 A.2d 920 (D.C.App.1966), Popkin Bros., Inc. v. Volk's Tire Co. et al., 20 N.J.Misc. 1, 23 A.2d 162 (S.C. N.J.1941), Cf. Stewart & Foulke, Inc. v. Robertshaw Controls, supra, at 397 F.2d 973. Settlement with plaintiffs is no bar to cross-claimants' rights to assert indemnity claims against Werner. To hold otherwise would be to ignore the strong policy of encouraging settlement in civil litigation.

Werner further contends that cross-claimants are barred from seeking indemnity because the complaint charged them with active negligence. Since no right of indemnity exists in favor of one whose negligence is "active", one who buys his peace from a complaint charging him with "active" negligence should not be permitted to shift his burden to another. Blockston v. U. S., 278 F.Supp. 576 (D.Md.1968), Inman v. Binghamton Housing Authority, 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 895 (C.A. N.Y.1957).

The complaint here alleges in general terms negligence in construction and design, as well as in furnishing plaintiff Gentry a scaffold unsafe to work on. Presumably these charges include negligence in assembling the scaffold from its component parts and failure to inspect to make sure the scaffold was safe for its intended use. Although mere failure to inspect a defective product in its normal progress through a chain of purchasers and sellers will not defeat a right to indemnity, Popkin Bros., Inc. v. Volk's Tire Co. et al., 20 N. J.Misc. 1, 23 A.2d 162, 164 (S.C.N.J. 1941), accord, Ianire v. University of Delaware, 255 A.2d 687, 691 (Del.Super.1969), 3 Frumer and Friedman, Products Liability § 44.02[3] (b), Restatement of Restitution, §§ 93, 95, negligence in assembly or knowledge of a defect uncommunicated to the user rises above "passive" negligence. Workstel v. Stern Bros., 3 Misc.2d 858, 156 N.Y.S.2d 335 (1956), Ambrose v. Standard Oil Co. of California, 214 F.Supp. 872 (D.Or. 1963). Thus it is impossible to tell if the settlement assumed a potential liability for the active or passive negligence charged. The release contains a disavowal of any liability.

To the extent that *Blockston*, relied on by Werner, holds that a settlement without more cannot support a

claim for indemnity, this Court agrees. That case was decided on summary judgment, however, and the court there specifically noted that the United States offered no other evidence supporting its right to indemnity. On this motion to dismiss, however, unless it appeared to a certainty that the evidence admissible in support of the complaint would establish only active negligence by cross-claimants, they should be permitted to bring forth evidence at trial to support their claim. Inman v. Binghamton Housing Authority, supra, seems to present the case where the defendant was either actively negligent or not negligent at all. To the extent that it supports Werner's position herein, it is sufficient to note that it did not arise under the more liberal federal rules of pleading.

The New York rule applied in *Inman* was discussed in Yanick v. Pennsylvania Railroad Company, 192 F.Supp. 368 (E.D.N.Y.1961), in the following terms:

"The logic of the rule seems to be that, if the plaintiff pegs his case to active negligence in his complaint, that is the proof he will offer at the trial. If the plaintiff can sustain his burden, the defendant will have no right to indemnity and a third-party should not be burdened with defending a premature suit." 192 F.Supp. at 370.

The Court there went on to hold that since the determination of the propriety of impleader was a procedural one, the federal courts were not bound by New York law. The function of Rule 14 is to dispose as expeditiously and inexpensively as possible of all related matters in one litigation, and the better result is to have all issues before the court in one trial "so that an appropriate judgment [can] * * * be entered upon the facts and verdict resulting therefrom." 192 F.Supp. at 371. The Court in *Yanick* upheld the claims for indemnity against a motion to dismiss, even though active negligence was clearly charged in the complaint, because it appeared that the third party plaintiff could have been liable for "a far lesser showing of culpability than the allegations of the complaint."

At the trial, of course, cross-claimants will be put to their proof to establish a right to indemnity in the present case. They must show that (a) they were actually or potentially liable to plaintiffs, (b) the settlement was reasonable, and (c) Werner is under a duty to indemnify them. See Blockston v. United States, supra, 278 F.Supp. at 586.

Werner contends finally that to permit the cross-claims to be asserted in this context does violence to the theory of indemnity. Indemnity is proper, it asserts, only when the alleged indemnitee has discharged the indemnitor's potential obligation. Since the settlement here does not affect Werner's potential liability to plaintiffs, it says, a fundamental condition of the right to indemnity has not been met. Werner cites no cases in support of his position, and although the Court agrees with the essence of the definition, it finds no violation of principle in its holding.

Indemnity is the shifting of financial loss from one whose payment terminates or reduces a valid claim against the other. Popkin Bros., Inc. v. Volk's Tire Co. et al., supra, 23 A.2d at 165. If it appeared that Werner might be called on to pay both the costs of settlement and plaintiffs' total damages, a different result might be essential to avoid injustice. But cf. Mazer v. Lipshutz, 360 F.2d 275 (3d Cir. 1966). But it is the law of Delaware that unless the release provides for reduction in a greater amount, the claims of the injured party are reduced by the consideration given for the release. Raughley v. Delaware Coach Company, 8 Terry 343, 91 A.2d 245 (Del.Super.1952). So cross-claimants have in a real sense reduced plaintiffs' claim against Werner. Permitting them to attempt to shift their loss under the law of indemnity works no injustice.

The cross-claims are therefore maintainable on the common law right of indemnity from an actively negligent

tort-feasor in favor of one whose negligence is passive, and no decision is required on issues of breach of warranty and strict liability.

Submit order in accordance herewith.