**SCOTT PAPER COMPANY, Plaintiff,**

v.

**SCOTT'S LIQUID GOLD, INC.,**
**Defendant.**

**Civ. A. No. 4766.**

United States District Court,
D. Delaware.

April 16, 1974.

Rudolf E. Hutz, of Connolly, Bove & Lodge, Wilmington, Del., Alfred T. Lee of Weil, Lee & Bergin, New York City, for plaintiff.

Richard F. Corroon and James F. Burnett of Potter, Anderson & Corroon, Wilmington, Del., Bruce G. Klaas of Edwards, Spangler, Wymore & Klaas, Denver, Colo., for defendant.

## OPINION

STAPLETON, District Judge:

Scott Paper Company, a Pennsylvania corporation, has brought this action against Scott's Liquid Gold, Inc., a corporation of the State of Colorado, for trademark infringement and unfair competition. Jurisdiction is alleged under 28 U.S.C. § 1338(a),(b). Service of the complaint and summons was effected pursuant to Rule 4(d)(7) of the Federal Rules of Civil Procedure and a Delaware long arm statute, 8 Del.C. § 382.

I consider here three motions made by the defendant: (1) that the suit be dismissed for lack of personal jurisdiction; (2) that the suit be dismissed for improper venue; and (3) in the alternative, that the suit be transferred to the District of Colorado under the provisions of either 28 U.S.C. § 1406(a) or § 1404.

### I. IN PERSONAM JURISDICTION.

Defendant's attack upon this Court's jurisdiction involves two questions: first, whether defendant was "transacting business" in the State of Delaware so as to be amenable to substituted service under the language of Section 382 of Title 8 of the Delaware Code, and second, whether defendant's connections with Delaware are such as to permit this Court to exercise *in personam* jurisdiction over it consistent with the Constitution.

Crucial to determination of these issues is an understanding of the nature and scope of defendant's connections with Delaware.

Defendant has no office, warehouse or manufacturing facility in the State of

Delaware. Its principal place of business is located in Denver, Colorado, where it manufactures and directs the marketing of its home cleaning products. Each of these products is marketed under the name "Scott's Liquid Gold." Defendant markets its products nationally, both through its employees who solicit orders from national chain stores and through commission brokers who solicit orders from smaller, independent retailers. Through these marketing channels defendant's products are made readily available to consumers throughout Delaware.

No employee of defendant has entered Delaware to solicit sales. However, as a result of employees' sales to large retailers defendant has shipped its products directly into this state. In addition, during the three years preceding the filing of the complaint, at least five of defendant's brokers have regularly and successfully solicited orders for Scott's Liquid Gold in Delaware from numerous retail establishments. Under their practice, after an order is obtained from a local retail store, it is sent to defendant's Colorado office where a judgment is made whether to extend credit to the retailer. If the sale is approved the product is shipped, via common carrier, directly to the Delaware retailer from a warehouse facility located in either Denver or Baltimore.

In order to stimulate a demand for its products in Delaware and elsewhere, defendant has advertised its Scott's Liquid Gold products extensively. This advertising program includes advertisements on national television, in magazines of national circulation and in newspapers with a substantial Delaware circulation. It is undisputed that many thousands of these commercial messages were intended to be and were received in Delaware.[1] Finally, defendant has caused an advertisement to appear in a Philadelphia newspaper with a wide circulation in Delaware. That advertisement contained a coupon which entitled its holder to a $.20 discount on a retail purchase of Scott's Liquid Gold and which made an offer to retail stores of consideration for accepting the coupon.[2]

Defendant contends that because none of its employees has personally solicited sales within Delaware, because the solicitations that have occurred were done by "independent" agents, because the "sale" of its products occurs in Colorado, and because the advertisements were largely national in scope and were in no case directed solely at a Delaware market, there is an insufficient relationship between the defendant and the forum state either to permit the conclusion that the defendant is "transacting business" in Delaware or to permit it to be sued in this Court consistent with the requirements of the Fifth Amendment.

### A. Service Of Process.

The first issue we face is defendant's amenability to service of process under the Delaware statute. Even

1. Examples of defendant's magazine advertising include "Woman's Day" (Delaware circulation 30,041 per issue), "Redbook" (Delaware circulation 16,327 per issue), "Better Homes and Gardens" (Delaware circulation 23,897 per issue), "House and Garden" (Delaware circulation 3,399 per issue), and "Southern Living" (Delaware circulation figures not given.) Television advertising has also been extensive. Defendant sends its television advertising of the SCOTT'S designated products into Delaware from at least three channels in Baltimore, Maryland, and at least five channels in Philadelphia, Pennsylvania. There is no commercial television station in Delaware. During the period from January to June of 1973 defendant broadcasted advertising of the SCOTT'S designated products in the marketing areas which include Delaware at an estimated cost of over $250,000. This advertising, reaching approximately 50% of the some 170,000 T. V. homes in Delaware included 920 commercials originating in Philadelphia and 540 commercials originating in Baltimore.

2. The coupon stated:
    Mr. Grocer: As our agent, accept this coupon for 20¢ on the purchase of SCOTT'S LIQUID GOLD 16 OZ. LIQUID GOLD 10 OZ. AEROSOL. Scott's Liquid Gold will redem (sic) for 20¢ plus 3¢ handling charges for each coupon accepted.

though this action arises under the laws of the United States, since service was effected under Rule 4(d)(7) of the Civil Rules, amenability to service presents a question of state law. Gkiafis v. Steamship Yiosonas, 342 F.2d 546 (4th Cir. 1965).[3]

The defendant is a foreign corporation which has not qualified to do business in Delaware. 8 Del.C. § 382 provides a mechanism for service of process upon such corporations under certain circumstances. It provides in pertinent part:

(a) Any foreign corporation which shall transact business in this State without having qualified to do business under Section 371 of this title shall be deemed to have thereby appointed and constituted the Secretary of State of this State, its agent for the acceptance of legal process in any civil action, suit, or proceeding against it in any State or Federal Court in this State arising or growing out of any business transacted by it within this State. . . .

(b) . . . "The transaction of business" or "business transacted in this State" by any such foreign corporation, whenever those words are used in this section, shall mean the course or practice of carrying on any business activity in this State, including, without limiting the generality of the foregoing, the solicitation of business or orders in this State.

This statute requires that two conditions be met before it can properly be invoked. First the corporate defendant must be transacting business generally in Delaware and, second, the suit must arise from business transacted in the state. Simpson v. Thiele, Inc., 344 F.Supp. 7, 8 (D.Del.1972); LaChemise Lacoste v. General Mills, Inc., 53 F.R.D. 596, 603 (D.Del.1971). I think the answer to the first part of our inquiry under the statute is relatively clear. The statute provides that "the transaction of business . . . shall mean the course or practice of carrying on business activities in this state, including . . . the solicitation of business or orders in this State." Delaware courts have held that a "liberal definition should govern the application of the current Delaware long arm statute." Nacci v. Volkswagen of America, Inc., 297 A. 2d 638, 641 (Del.Super.1972); County Plumbing & Heating Co. v. Strine, 272 A.2d 340 (Del.Super.1970). Under such an approach this Court is confident that defendant is "carrying on business activities within this state."

It well may be, as defendant urges, that the sponsor of a national advertising campaign does not necessarily transact business generally in Delaware within the meaning of this statute. I need not decide that question since defendant's Delaware advertising is but one part of an integrated marketing program which has other significant contacts with this state. That advertising is intended to and apparently does generate a consumer demand in Delaware for defendant's products. That demand, in turn, generates corresponding demand among Delaware retailers. The benefit from that demand is reaped, in part, through the solicitation of orders in Delaware by defendant's commission brokers. The end result of that solicitation and defendant's systematic cultivation of the Delaware market is a continuous flow of its products into this state.

The argument that the defendant's brokers are "independent contractors" and that their actions, accordingly, can-

---

3. The circuit court cases holding that, in a federal question case, *in personam* jurisdiction is to be determined with reference to federal common law are not controlling here since in those cases service was had under the provisions of Rule 4(d)(3) by a personal service within the state on an agent of the corporate defendant. See Fraley v. Chesa- peake & Ohio Ry. Co., 397 F.2d 1 (3rd Cir. 1968); Lone Star Package Car Co., Inc. v. Baltimore & Ohio R. Co., 212 F.2d 147 (5th Cir. 1954). An obviously different situation obtains when, as here, service is made pursuant to a state statute adopted under the terms of either Rule 4(d)(7) or 4(e).

not be considered in determining whether defendant is "transacting business" in Delaware, is unpersuasive. It is clearly defendant's business objective to sell its products on a regular and continuing basis to Delaware retailers. It has conscientiously pursued that objective by utilizing commission brokers over a substantial period of time to solicit orders in Delaware. Clearly it would be carrying on business activities in Delaware if this same function had been performed by its employees. The fact that it has elected to pay for these services through commissions rather than salaries does not alter the business reality of the matter. As Judge Wright has stated in a closely analogous case:

> It is persuasive that inasmuch as (the defendant) retains the right to reject or accept all orders, ships directly from the factory to the customer and is compensated directly by the customer, (its) products could not find their way to Delaware customers without (the broker). It cannot be controlling that (the broker) is compensated by commission rather than salary.

Gentry v. Wilmington Trust Co., 321 F. Supp. 1379, 1382 (D.Del.1970). *Cf.* County Plumbing & Heating Co. v. Strine, *supra;* King & Hatch, Inc. v. Southern Pipe & Supply Co., 435 F.2d 43 (5th Cir. 1970).

The second pre-condition for the proper employment of the Delaware statute is that the claim sued upon arises or grows out of business activities of defendant in the state. This action arises under federal law. It is grounded in part upon 15 U.S.C. § 1114 which, as relevant, provides:

> (1) Any person who shall, without the consent of the registrant—
>
>> (a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering

for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

> \* \* \* \* \* \*
>
> shall be liable in a civil action by the registrant for the remedies hereafter provided.

The defendant has repeatedly used the allegedly infringing mark in advertising in Delaware and on products shipped by it into Delaware for resale here. Plaintiff has similarly used its trademark in Delaware and it is alleged that this simultaneous use has produced confusion and resulting damage to plaintiff in Delaware. Under these circumstances, it is reasonable to conclude that the plaintiff's claim "arises or grows out of" business activities of the defendant in Delaware and that the second test of 8 Del.C. § 382 is met.

### B. *Constitutional Issue.*

■ Having determined that defendant was "transacting business" within the Delaware statute and that the claim asserted arose out of that course of conduct, and thus having concluded as a matter of statutory interpretation that the Delaware substituted service provision was properly employed, we are left with a constitutional inquiry: whether assertion by this Court of *in personam* jurisdiction over the defendant violates the Due Process Clause of the Fifth Amendment.

Resolution of this question requires the Court to determine whether defendant has certain "minimum contacts . . . such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).[4]

---

4. While the Supreme Court cases articulating the "minimum contacts" test dealt with the reach of state court jurisdiction over the person, the test has been held to be applicable to the district court where jurisdiction is premised on a federal question. See *e. g.,* Fraley v. Chesapeake & Ohio Ry. Co., *supra.*

The same analysis which has led the Court to sustain plaintiff's resort to Section 382, also indicates that defendant's contacts with Delaware are sufficient to meet this fundamental fairness standard. The facts of this case are much like those before the Court in H. K. Corporation v. Lauter, 336 F.Supp. 79 (N.D.Ga.1971). In that trademark infringement suit, the defendant had sold his product to Georgia retailers through manufacturer's representatives paid on a commission basis. After noting the "fair play and substantial justice" standard of *International Shoe*, Judge Smith made the following observations which are equally pertinent here:

> This is not a case where the contact between the non-resident defendant and Georgia is only one or two isolated sales to Georgians in which a few dollars change hands. Defendant during a period of twelve months made sales to fifteen Georgia customers and derived from those sales $19,000. Furthermore, this is not an instance where the contact with Georgia is entirely unrelated to the tort for which defendant is being sued. In a case such as this, it seems neither unfair nor unjust to hold that a businessman defendant who has been gaining substantial revenue from sales to Georgians may be sued in a Georgia court in an action arising almost directly from

those sales. Defendant's motion to dismiss must be denied.

Similar conclusions were reached by this Court in the *Gentry* case and by the Fifth Circuit in King & Hatch, Inc. v. Southern Pipe & Supply Co., 435 F.2d 43 (5th Cir. 1970).

## II. VENUE.

Plaintiff asserts that venue is properly laid in this Court both because the claim arose in this district, 28 U.S.C. § 1391(b), and because the defendant is "doing business" here, 28 U.S.C. § 1391(c).

Defendant urges that the "doing business" test of Section 1391(c) is not the same as the "transacting business" test of the Delaware long arm statute. It contends that "doing business" is a federal, not a state law question and that it has been construed to be a good deal more restrictive than the language employed in the state statute. It concludes that even if it is "transacting business" in Delaware for purposes of amenability to service it is not "doing business" in Delaware for venue purposes.

I believe defendant to be correct in its assertion that a determination of the reach of the Delaware long arm statute does not necessarily answer the question whether it was doing business in this district for venue purposes.[5] While that

5. Some cases and some commentary support the proposition that a corporation that has sufficient minimum contacts with a jurisdiction so that it is fair to require it to defend a lawsuit in that jurisdiction is, by that fact alone "doing business" there so as to make that forum a proper one under Section 1391(c). Houston Fearless Corporation v. Teter, 318 F.2d 822 (10th Cir. 1963). Professor Moore concurs, concluding a discussion of this topic with this language:
> We believe that if a corporation is amenable to service of process it should be held to be "doing business" for venue purposes. (Citing cases) . . . If it is not unfair to subject the corporation to the court's jurisdiction by service of process, it seems wise and not unfair to hold that there is a proper venue, particularly

when the case can be transferred to other venue, if convenience warrants.
1 Moore, Federal Practice ¶ 0.142 [5.–3]. But see Judge Wisdom's remarks in Time, Inc. v. Manning, 366 F.2d 690, 696 (5th Cir. 1966) ("jurisdiction and venue, while comprising many of the same considerations, are not the same thing. . . . Cases (arise) in which jurisdiction exists, but the inconvenience of requiring the defendant to defend this suit where brought is so substantial that Congress, through the venue provisions of the judicial code, has prohibited the maintenance of suit there. . . ."). See Carter v. American Bus Lines, 169 F.Supp. 460, 469 (D.Neb.1959); Remington Rand v. Knapp-Monarch Co., 139 F.Supp. 613 (E.D. Pa.1956).

question requires an independent, though related inquiry, it is not an inquiry that we need undertake, since this Court is of the view that the claim asserted arose in this district.

■ Defendant contends that the goods which it ships into Delaware are actually sold by it in Colorado and that the goods in Delaware are, accordingly, owned by retailers. Thus, it argues that the tortious act of trademark infringement and unfair competition is an act of the retail store customers of defendant, not of defendant itself. This reasoning is unavailing for two reasons. First, it does not appear to be relevant in determining where any claim for trademark infringement may have arisen. Injury to the holder of a mark occurs when its name is confused with that of the alleged infringer. Such confusion, if it exists in this case, clearly occurred in the State of Delaware. That it may have occurred elsewhere does not change this fact. It misses the point to suggest that if the infringing product itself is "sold" by defendant only in Colorado, an action for trademark infringement can arise nowhere else; the "tortious act", even if considered "an act of the store customers not of defendant," is still an act for which defendant is legally responsible under trademark law. Kay Dunhill, Inc. v. Dunhill Fabrics, 44 F. Supp. 922 (S.D.N.Y.1942); Stix Products, Inc. v. United Merchants & Manufacturers, Inc., 295 F.Supp. 479 (S.D.N.Y.1968). Second, defendant's argument is unpersuasive because it ignores substantial advertising which occurred in Delaware and which, under the Lanham Act is, itself, sufficient to support a valid claim.[6] Defendant's motion to dismiss for improper venue will be denied.

## III. MOTION TO TRANSFER

■■ Defendant has moved to transfer this action to the District of Colorado under 28 U.S.C. § 1404.[7] Three factors are to be considered by the Court in passing on a motion of this kind: the convenience of the parties, the convenience of witnesses, and the interests of justice. This case is one of those not uncommon occasions in which the convenience of plaintiff and its witnesses weighs strongly in favor of its choice of forum while the convenience of the defendant and its witnesses strongly favor a different and distant forum. Plaintiff is headquartered in Delaware County, Pennsylvania, approximately 25 miles from this Courthouse. Its affidavits indicate that all of its potential witnesses are employed at its home office and reside in this general vicinity. Trial in Wilmington would, accordingly, be convenient for them. In addition, plaintiff's records concerning the advertising, promotion and sale of its products and its "SCOTT" names and marks are located either at its home office or at its records storage facility in Chester, Pennsylvania, approximately 20 miles from Wilmington.

Defendant, on the other hand, is headquartered in Denver, Colorado. Its officers and employees who had knowledge relevant to the issues in this case are all located in Denver, as are all of its relevant business records. The defendant and those of its potential witnesses in its employ would understandably prefer trial in Denver rather than in Wilmington.

Defendant's main contention favoring a Denver forum emanates from its claim that its products were originated in Denver sometime in the early 1920's by

6. While this Court has uncovered no case addressing the question of where a claim for trademark infringement arises when it is based upon multi-state advertising, analogy to cases dealing with the question of where a libel claim arises under similar facts offers support for the conclusion that a trademark claim arises wherever the injury from the infringing advertisement occurs. Buckley v. New York Post Corp., 373 F.2d 175, 179 (2nd Cir. 1967) (Friendly, J.). *Cf.* Novel v. Garrison, 294 F.Supp. 825 (N.D.Ill.1969).

7. Having found proper venue in this district, Section 1406 is inapposite.

a chemist named Dr. Scott. According to defendant, the business Dr. Scott developed was transferred to another person in the late 1920's and subsequently to the organizers of defendant corporation in 1951. Initially limited to the Denver, Colorado area, marketing of Scott's Liquid Gold has gradually expanded, first to the neighboring states and ultimately to the entire country. Defendant states that in order to prove its predecessors' use of the Scott's Liquid Gold name, it "may request" testimony from some 18 persons not in its employ who now reside in Kansas, Texas, Colorado, California, Arkansas or Missouri. These people, it is urged, are unlikely to appear voluntarily in a suit on the east coast but might appear in a suit closer to their own homes.

Perhaps understandably, defendant is unable to say at this time which of these 18 people are necessary to an adequate presentation of its case. The affidavit which lists their names and residences gives neither an indication of the relevant testimony which each might give nor even a statement of their relationship to the matters at issue here. Moreover, at the hearing on the pending motions, defendant was unable to represent to the Court either that any of these witnesses would voluntarily appear at a Denver trial or that any of them would not voluntarily appear in this Court.

The legal test to be applied on motions of this kind in this circuit was set out in Shutte v. Armco Steel Corp., 431 F.2d 22 (3rd Cir. 1970):

> It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed (citing cases). In accord with that sound doctrine one district court recently correctly observed: The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted. . . . The burden is on the moving party to establish that a balance of proper interests weigh in favor of the

transfer (citing cases) and . . . unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail.

I must conclude on the current record that defendant has not carried the burden which the *Shutte* case imposes upon it. In short, I am unable to say that Delaware is any less convenient for defendant and its witnesses than Colorado would be for plaintiff and its witnesses, and no other considerations relating to "the interests of justice" have been brought to the Court's attention which would tip the scales in defendant's favor.

Defendant's motion to transfer is denied.

Submit order.